**STATE of Tennessee, Plaintiff-Appellant,**

v.

**William H. BYERLEY,**
**Defendant-Appellee.**

Supreme Court of Tennessee.

July 6, 1982.

Gordon W. Smith, Asst. Atty. Gen., Nashville, for plaintiff-appellant; William M. Leech, Jr., Atty. Gen., Nashville, of counsel.

Icenhour, Wohlford & Miller, Bristol, for defendant-appellee; Tex R. Morelock, Rogersville, of counsel.

## OPINION

BROCK, Justice.

The defendant, William H. Byerley, was convicted of possession of marijuana with intent to sell and sentenced to a prison term of one to two years. At trial, his motion to suppress evidence seized from his car without a warrant, was denied. The Court of Criminal Appeals reversed, holding that the plain view doctrine did not justify the search and seizure, because the officers had not satisfied the inadvertency requirement when they purposely looked in the car to see if drugs were present. Application for permission to appeal was granted to determine the constitutionality of the search and seizure.

On April 2, 1977, police officers obtained a search warrant for a house located at 1946 Fort Robinson Drive, thought to be inhabited by two women dealing in drugs. One of the women, Melanie Erwin, was named in the warrant. The warrant was executed at 3:00 a.m., April 3, 1977, at which time approximately a quarter of a pound of marijuana and assorted drug paraphernalia was found. Erwin was not at home; but the other woman, Janet Williams, was arrested. After leaving the premises, Officer Sampson spotted a 1971 maroon Mustang in which Erwin was riding as a passenger. They followed the car back to Ms. Erwin's residence and arrested Erwin as she was approaching the side door to the house. In her company was the defendant, whose presence and relationship to the drug offense was not known prior to this event. Officer Hickman remained with Erwin while she was seated in the rear of the patrol car. Following Erwin's arrest, pursuant to standard operating procedure, the officers sought the defendant's identification. After looking at his driver's license, they permitted him to get Erwin's keys and enter the house.

At this time, Officer Sampson went to look inside the defendant's car to see if there was any more marijuana. Sampson testified that he made the decision to look in the car when he first spotted Erwin in the car prior to her arrest. He planned to look in the car at the time Erwin was arrested, but, since he was unable to follow them as closely as he had anticipated, they were already at the entrance to the home by the time the officers arrived.

The defendant's car was parked in the yard about 4 to 6 feet from the street. There was a ditch between the car and the street. The yard was open and it would have taken "two or three cruisers" to stop the defendant from departing if necessary. Officer Sampson shined his flashlight in the car, first on the passenger's side and then on the driver's side. He saw a small brown paper bag containing plant material behind the driver's seat on the back floorboard. Officer Hickman gave him permission to seize the bag from the unlocked vehicle, at

which time he discovered approximately a half pound of marijuana. The officers returned to the house and arrested the defendant. In addition to the facts and circumstances surrounding Ms. Erwin's arrest, Sampson noted that an informant had told him that Ms. Erwin was giving some of her marijuana to her boy friend. He did not know who the boy friend was, but deduced that Byerley was perhaps Ms. Erwin's boy friend, because he told the officers that the two of them had just been to a dance in Johnson City.

The Court of Criminal Appeals erred in holding that the requirements of the "plain view doctrine" were not satisfied in this case. Generally speaking, the term "plain view" is used to describe two separate and distinct occurrences by which evidence is discovered.

Traditionally, plain view denotes an extension of a prior valid search; *i.e.,* officers executing a warrant or conducting a search by consent or incident to an arrest, etc., may inadvertently come upon unexpected evidence of crime. The plain view doctrine arose primarily as a result of the plurality decision in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and has been restricted to the three requirements in which an officer must: (1) have rightfully been in the place where he made the plain view discovery, (2) have made the discovery inadvertently and (3) have immediately recognized the incriminating nature of the object discovered. Although the U. S. Supreme Court has never adopted this doctrine by a majority decision, most state jurisdictions, including Tennessee, have done so. *See, Armour v. Totty,* 486 S.W.2d 537, 538–39 (Tenn.1972).

■ Distinguishable, however, are those cases in which an officer accidentally comes upon incriminating evidence in a place where there is little or no expectation of privacy, and where the discovery he makes is not preceded by an otherwise valid Fourth Amendment search. In other words, the discovery occurs without any prior intrusion into the defendant's privacy; *i.e.,* a "look." There is a clear distinction between a look and a search. Whereas a search is afforded all the Fourth Amendment protections, a look of a non-*Coolidge* type includes those observations which are clearly visible, readily observable and open to public gaze. *See, e.g., Scales v. State,* 13 Md.App. 474, 284 A.2d 45, 47 at fn. 1 (1971); *State v. Kaaheena,* 59 Haw. 23, 575 P.2d 462 (1978); and *State v. Daigle,* 344 So.2d 1380, 1390 (La.1977). The distinction is also recognized in 1 LaFave, *Search and Seizure,* § 2.2(a) at 242 *et seq.,* and in Ringel, *Searches & Seizures, Arrests and Confessions* § 8.2 at 8–4 *et seq.* (2d ed. 1979) which provides that:

"Not every observation made by a government agent amounts to a search within the meaning of the Fourth Amendment. The police may take note of anything that is evident to any of their senses, as long as they are in a place where they have a right to be, and as long as they do not resort to extraordinary means to make the observation.... These observations are fully usable to provide probable cause to obtain a search or arrest warrant or for the police to conclude that exigent circumstances exist requiring immediate seizure."

In such a case, there is no "search" in the Fourth Amendment sense, and thus, no necessity for the three requirements under *Coolidge v. New Hampshire, supra.* This distinction is also discussed in 1 LaFave, *Search and Seizure* § 2.5(c) at 355–356:

"It is a fair generalization that if a law enforcement officer is able, by the use of his natural senses, to discover what is inside a vehicle while 'standing in a place where he had a right to be,' this discovery does not constitute a Fourth Amendment search.... If a vehicle is located on private property, but the police have made a lawful entry upon that property for some legitimate reason, what they see in plain view in the car while present at a place on that property which is consistent with the reason for their presence is also admissible."

■ In *Cook v. Commonwealth,* 216 Va. 71, 216 S.E.2d 48 (1975), officers obtained a

search warrant for drugs in the defendant's apartment. While the warrant was being executed, the defendant arrived in his car and parked on the street just outside the door. The officers found the drugs in the apartment and arrested the defendant. One of the officers thought there might be other drugs in the defendant's car. Upon looking into the car through the window, the officer saw certain objects associated with illegal drugs and seized them. The parties sought to make the question of inadvertence determinative, but the court pretermitted that issue. As is true in the case at bar, the court noted that they were deciding the narrow issue of whether a police officer, who is rightfully on the premises, is conducting a search, in the constitutional sense, when he merely "looks in" a parked automobile and observes that which is openly exposed to view. Common sense and established legal precedent tell us that a look under such circumstances does not constitute a search.

The only distinction between the instant case and *Cook* is that here the car was parked in a private yard rather than on the street. But in substance, there is no difference. Byerley's car was parked no more than 4 to 6 feet from the public street. The drugs were openly exposed in a car which he had been driving on public highways. Moreover, the policeman had a right to be on the private property where the car was parked, having come there virtually in hot pursuit to arrest the defendant's companion. Once an official is rightfully there, he may look into a car window without intruding upon the defendant's expectation of privacy, and the fact that he does so deliberately does not transform a mere observation into a search in the constitutional sense. Thus, a policeman may look either deliberately or inadvertently into a parked car. It is not a search within the meaning of the Fourth Amendment merely to look and observe that which is open to view. Since this was not a search *per se*, it should not be subject to Fourth Amendment standards.

■ A discovery is inadvertent if the officer suspects, has a feeling, or knows of the possibility of, undefined contraband in an unspecified location; but, where his level of knowledge rises to that of probable cause, inadvertency no longer exists and a warrant is required. For a general discussion, *See* W. Ringel, *Searches & Seizures, Arrests and Confessions* § 6.5(a)(2) (2d ed. 1979). *See, e.g., United States v. Hare*, 589 F.2d 1291 (6th Cir. 1979) in which the court held that

> " '[I]nadvertence' . . . means that the police must be without probable cause to believe evidence would be discovered until they actually observe it in the course of an otherwise-justified search. There are many times when a police officer may 'expect' to find evidence in a particular place, and that expectation may range from a weak hunch to a strong suspicion. However, the Fourth Amendment prohibits either a warrant to issue or a search based on such an expectation. Yet if in the course of an intrusion wholly authorized by another legitimate purpose, that hunch or suspicion is confirmed by an actual observation, the police are in precisely the same position as if they were taken wholly by surprise by the discovery. The same exigent circumstances exist, and no warrant could have been obtained before the discovery." Id. at 1294.

The court noted that to hold otherwise would create an "absurd scenario," whereby an experienced officer would tend to anticipate certain results, however, this mere suspicion would not be enough to secure a warrant based on probable cause; but a plain view seizure would be prohibited because the discovery was made intentionally rather than inadvertently.

The information which the officers possessed prior to the "search" was not strong enough to constitute probable cause to believe the defendant was in possession of drugs. Although an informer had told police that Ms. Erwin had given some drugs to her boy friend, the officers had not expected to find defendant with Erwin on this occasion, did not know if defendant was the boy friend, did not know the name of the

boy friend, did not know if he had drugs in his car, and did not know the exact location of any drugs nor the kind of drugs. Since probable cause did not exist, this was not a search for which the officer should have obtained a warrant; this was an inadvertent discovery.

■ The final issue is whether exigent circumstances existed justifying the seizure. In *Fuqua v. Armour*, 543 S.W.2d 64 (Tenn. 1976), the Court held that when probable cause exists, an automobile may be searched or seized without a warrant so long as exigent circumstances exist. Exigent circumstances exist when a vehicle is moving on a public highway and it is impracticable to obtain a search warrant but do not exist "after the vehicle has completed its journey and is at rest on private premises." *Id.* at 66. The law of *Fuqua* reiterates that there is no exigency *per se* in the inherent mobility of cars. *Id.* at 67. While the word "automobile" is not a "talisman in whose presence the Fourth Amendment disappears," *Fuqua v. Armour, supra* at 67, citing *Coolidge*, the fact that a car is parked on private grounds likewise does not automatically foreclose the occurrence of some exigency permitting a warrantless search. To claim that *Fuqua* stands for the proposition that exigent circumstances can never occur in relation to a car parked on private property is erroneous. This case is significantly distinguishable from the facts in *Fuqua*, where the car had been parked in the same place in a driveway for three weeks, and at a time when defendant was in custody. Under the circumstances presented in *Fuqua*, the relative ease in obtaining a warrant for the seizure of the car was crucial.

In the case at bar, the officers in question had one patrol car, a suspect who was not in custody, a car not parked for many days but one which had just been pursued to its location in the yard, very close to the public street. The officers testified that it would have taken two or three cruisers to block an attempt by the defendant to leave in his car. Since this was Ms. Erwin's residence and not that of the defendant, it is also reasonable to conclude that the vehicle had not completed its journey. This case presents the kind of fluid situation in which the car is not secured, the risk of delay to obtain a warrant is high and, therefore, not within the contemplation of *Fuqua*.

■ This was not a Fourth Amendment search but a mere *nonintrusive observation*. The discovery of criminal evidence in such circumstances permits a warrantless *seizure* only when the exigency criteria are satisfied.

"Although simple observation of an article is not proscribed under the Fourth Amendment, it does not follow that the seizure of the same article does not invoke Fourth Amendment scrutiny. It is possible . . . that while the visual observation of an article does not violate any reasonable expectation of privacy, the seizure of the same article may intrude upon such reasonable privacy expectations . . ." *See*, Ringel, *supra*, § 8.2(2) at 8–7.

In essence, the observation of the article may provide probable cause, but seizure without a warrant is permissible only if exigent circumstances exist. *Fuqua v. Armour, supra*. The circumstances in this case permitted a warrantless seizure of an open bag of marijuana discovered at a time when the officers were rightfully on the premises, when the defendant was alerted but not in custody, and the car was movable.

The Court of Criminal Appeals decision is reversed and the trial court's determination is reinstated. Costs of this appeal will be borne by the defendant, William Byerley.

HARBISON, C. J., FONES and DROWOTA, JJ., and DAVIS, Special Judge, concur.