**STATE of Tennessee, Appellant,**

v.

**Jerry JENNETTE and Marita Jennette, Appellee.**

Supreme Court of Tennessee,
at Nashville.

Jan. 20, 1986.

David M. Himmelreich, Asst. Atty. Gen., Nashville (W.J. Michael Cody, Atty. Gen. and Reporter, Nashville, of counsel), for appellant.

William P. Redick, Jr., Nashville, for appellee.

## OPINION

HARBISON, Justice.

In this case appellees pled guilty to a charge of manufacturing marijuana for resale. In connection with their guilty plea they undertook to reserve, with the consent of the trial court, questions of law for review on appeal pursuant to Rule 37(b)(2)(iv), Tennessee Rules of Criminal Procedure.

That rule permits an appeal from a conviction on a guilty plea if:

"[d]efendant explicitly reserved with the consent of the court the right to appeal a certified question of law that is dispositive of the case."

Nowhere in the order of the trial court is a dispositive certified question stated, nor does the same appear in a written motion to suppress filed by appellees. Instead, at the suppression hearing counsel for appellees stated that there were "several issues" involved in the case including "a whole range of Fourth Amendment questions and Article I, Sec. 7 questions of the Tennessee Constitution...."

In the Court of Criminal Appeals and in this Court appellees have sought to raise a large number of questions involving the broad field of search and seizure without any specification or certification from the trial court and without demonstrating how most of these questions could be dispositive of the case.

Apparently the State raised no objection to the procedure followed, and the Court of Criminal Appeals accepted the case for review. It resolved most of the questions against appellees, but sustained their position on one issue. The Court of Criminal Appeals then dismissed the charges in their entirety, despite the fact that this single issue could not have been dispositive under the facts and circumstances of the case.

Finding error both in the procedure involved and on the issue which the Court of Criminal Appeals decided for appellees, we reverse and reinstate the judgment of the trial court.

### A. *Factual and Procedural Background*

State and local police officials conducted a helicopter search for growing crops of marijuana in Cheatham County on September 1, 1981. They flew over a 25-acre tract owned by appellees in a rural section of the county. They did not know the boundaries of the tract, the names of the owners, or whether a house seen in the area was or was not located on the tract where two small but widely separated patches of marijuana were observed. They radioed the local sheriff who went to the area with other officers and entered the premises without a warrant. The helicopter personnel landed nearby and were also transported to the scene. At the suppression hearing appellees testified that they owned the 25-acre tract and that the house situated thereon was their residence. They confirmed the testimony of the officers that marijuana was in fact growing on their property in the areas observed from the air. Neither patch was sufficiently close to the residence to be claimed a part of the "curtilage". Appellees contend that neither patch could have been seen or observed from the ground by officers standing or driving at the boundary of their property.

There were two entrances to the property, although this fact was not known to the officers. The one which they used was a back entrance, not regularly used by appellees. It was posted with "No Trespassing" signs and blocked by a cable. The officers walked from this entrance for several hundred yards to the house and then went to the marijuana patches.

From the air, no one had been observed where the marijuana was situated, and the two patches together contained only twenty-six stalks of the material. These were large stalks, from eight to twelve feet high, sixteen in one patch and ten in the other. Mrs. Jennette and her sixteen-year-old stepdaughter were in the house, and later Mrs. Jennette was seen carrying some marijuana past one of the windows. The officers thereupon entered the house and searched it. Appellees, however, have not raised any separate question concerning this entry and search. We do not attempt to deal with it, because suppression of the brief testimony concerning marijuana found in the residence could not in any sense be dispositive of this case under Rule 37, T.R. Crim.P.

The local sheriff testified that he visited both patches of marijuana. He stated as follows:

"And see, when we got down in the hollow, it was a small amount of marijuana looked like it had been pulled off that morning and dropped right at the end of the field."

The officers pulled the remaining marijuana plants and transported them off the premises on vehicles which they drove under the cable suspended across the drive through which they had entered. They destroyed the crop that evening, preserving only a small sample of it. Although the motion to suppress was couched in terms of suppressing the evidence seized, obviously its thrust was to suppress the testimony of the officers about the entire transaction as well as to suppress the small quantity which had been preserved but which was not, insofar as we can tell from the record, exhibited at the suppression hearing.

The motion to suppress was stated in general terms, alleging an improper warrantless search under the state and federal constitutions. The suppression hearing consisted of the filing of a transcript of a preliminary hearing held on December 3, 1981 and of testimony adduced from appellees on October 11, 1982.

In November, 1981 the Court of Criminal Appeals rendered its opinion in the case of *State v. Roode,* upholding the seizure of marijuana observed from a helicopter overflight. This Court granted permission to appeal by the defendant. On February 11, 1982, counsel for appellees filed a motion in the present case to stay the proceedings because of the pending appeal in the *Roode* case, stating in the motion that the instant case "raises identical legal questions." He sought to have the trial court stay the present case until it might "have the benefit of the Supreme Court opinion in the case of *State v. Peter Roode . . . .*"

This Court rendered its decision in the *Roode* case on November 22, 1982. *See State v. Roode,* 643 S.W.2d 651 (Tenn. 1982). The Court held, as had the Court of Criminal Appeals, that there was no search involved in a lawful aerial overflight, so that there were no Fourth Amendment questions presented with reference to observations made by officers conducting such activity. Similarly there are no such questions raised under the comparable state constitutional provisions.

Although he ruled on the suppression motion prior to this Court's decision in *Roode,* the trial judge held that there was no search involved insofar as the testimony of the officers concerning the overflight was concerned. The Court of Criminal Appeals agreed.

That should have ended the case. If the testimony of the officers concerning the overflight could not have been suppressed, it alone was sufficient to convict the appellees. Only if appellees could have suppressed all testimony about both the overflight and the subsequent entry could any question "dispositive of the case" under Rule 37 have been presented. Since the Court of Criminal Appeals agreed that there was no unlawful search in connection with the overflight, no other proper Rule 37 issue was before it. However, appellees undertook to raise a series of issues in the Court of Criminal Appeals and have pursued most of them here. In the Court of Criminal Appeals they questioned the authority of officers of the Tennessee Highway Patrol to enforce the drug control statutes, argued that the *Roode* case, *supra,* had been erroneously decided by this Court and sought its overruling or modification, sought guidelines concerning limits on the right of overflight and finally complained of the warrantless entry upon their property by the officers after the aerial observation. Most of those same issues have been pursued in this Court. As stated, none of them could be dispositive, except suppression of the entire evidence, and that would involve the overruling of the *Roode* case. We have no disposition to disturb that holding but reaffirm it. Nothing in the record in the present case suggests anything illegal or improper about the helicopter observation or the manner in which it was conducted. Accordingly, since the motion to suppress must have failed, at least in part, the judgment of the trial court should have been sustained under Rule 37.

The Court of Criminal Appeals did not do so, however, but went further to hold that even though the initial observation of the

marijuana was lawful and proper, still the later entry upon appellees' property without a warrant was improper conduct by the officers. The Court of Criminal Appeals accordingly reversed the judgment of the trial court and dismissed the indictment. In doing so, we are of the opinion that the Court of Criminal Appeals improperly applied Rule 37, T.R.Crim.P.

■ It is possible for there to be more than one certified question under Rule 37, but any question sought to be presented under that rule, following conviction on a guilty plea, should (1) be precisely stated in the order of the trial court certifying the question and (2) be dispositive of the case if the trial court is in error. The rule was never designed to authorize a general review of numerous factual and legal issues without express articulation and without these being completely controlling.

Because the State did not object and because the Court of Criminal Appeals accepted the appeal in the posture presented, we feel it appropriate to deal with the issue which that Court did decide in favor of appellees, although, as stated, it is not and could not be dispositive of the charges.

### B. *The Warrantless Entry*

Appellees have insisted that entry upon their property, despite lawful observation of contraband growing thereon, was improper under the state and federal constitutions since the officers did not obtain a warrant and since there were no "exigent circumstances" shown in the proof. The Court of Criminal Appeals agreed with this contention. We reverse.

While not necessary to our decision, we point out that the circumstances may have been considerably more "exigent" than appellees contend. It is their insistence that the officers should have paused at their boundaries and have sent personnel back to Ashland City, the county seat, a short distance away, to obtain a warrant before entering their property. The sheriff testified, however, that at a minimum it would have taken about two hours to have the necessary affidavit prepared and the warrant issued. As stated previously, although there is some conflict on the point, appellees have insisted throughout that the officers could not observe either patch of marijuana from the ground. Some of the marijuana had already been pulled up before the officers arrived. The helicopter, of course, created a great deal of noise, which was heard not only by Mrs. Jennette but by neighbors in the vicinity. It was short of fuel and had to land before officers on the ground entered to seize the marijuana. The helicopter personnel returned to the scene by automobile and then directed the other officers to the area where the marijuana was growing. Whether Mrs. Jennette had gone to the patch earlier or during this interval and attempted to pull up some of the marijuana before the officers arrived cannot be determined from this record. Some of the officers involved in the incident, however, had had a similar experience in the recent past, when they had attempted to obtain a warrant after an aerial observation of marijuana. When they arrived at the scene with their warrant, all traces of the marijuana had been destroyed. Appellees argue that Mrs. Jennette and her daughter could not possibly have destroyed all of the marijuana involved in the present case, but, as previously stated, there were only sixteen plants. At least some of these had been pulled up just before the officers did arrive.

■ While both courts below have found that there were no "exigent circumstances," we think that this is, to say the least, a very close question and a contrary decision could very easily be reached on the facts. Appellees concede that officers may enter premises without a warrant when property owners have been alerted to their presence and there is a reasonable likelihood that evidence may be destroyed if the officers have to interrupt their investigation to obtain a warrant. While the obtaining of a warrant is not an insurmountable task, it is time-consuming, particularly where, as here, the officers do not know the names of the occupants, the boundaries of the property, cannot see the contraband from the ground and do not know whether or not the

house located on the property is or is not part of the premises where the marijuana is growing. It seems to us from this record that there might have been considerable difficulty in obtaining a valid warrant without appreciable risk of the evidence being destroyed.

It is only unreasonable searches and seizures that are prohibited by the state or federal constitutions. Despite the heavy judicial gloss on the provisions of both instruments, reasonableness of the conduct of investigating officials in light of all the surrounding circumstances has to be the touchstone of whether or not evidence concerning a particular seizure should be suppressed in furtherance of the exclusionary rule.

Appellees insist, and the Court of Criminal Appeals held, that the facts of the *Roode* case, *supra*, could be distinguished from the present case because there the officers entered premises where marijuana was found and seized it but at the same time observed persons in the fields. This Court did not rest its decision on the presence of "exigent circumstances". It held that the growing of marijuana in the quantity present in that case was a felony under existing statutes and said:

"Having observed a felony being committed, the officers were justified in descending to the ground to arrest appellant and others on the premises engaged in growing and processing the marijuana and in seizing the contraband." 643 S.W.2d at 654.

The Court did speak of the lack of opportunity to obtain a warrant. It said:

"Issue is made by appellant of the fact that Lt. Dover did not attempt to secure a search warrant before returning to and landing on appellant's farm. Appellant insists that Lt. Dover had time [1] within which to get a warrant and that he could have had local officers secure the roads leading to the farm for the time it would take him to secure the warrant. These arguments overlook the fact that after the aerial observation, Lt. Dover was unable to locate the farm on the ground with the particularity needed for a search warrant. Neither was he able to pinpoint the location of the farm with sufficient particularity to direct officers on the ground to the farm. In short, no realistic opportunity existed for Lt. Dover to secure a search warrant before returning to the farm. Dover's only alternative under the circumstances was to again locate the farm from the air. This he undertook to do. On arriving at the farm, he and the other officers in the helicopter saw the fields of marijuana under cultivation, and also saw men running from the fields." 643 S.W.2d at 653–654.

Since the fields in the present case were empty, appellees insist that it would have been a simple thing for the officers to obtain a warrant. As already indicated, we do not believe that it would have been as simple or practical as appellees insist. We have already indicated that appellees at one time represented to the trial court that the issues in the present case were the same as those in *Roode*, and to a substantial extent we are of the opinion that *Roode* controls the present case. Appellees have sought both in the Court of Criminal Appeals and in this Court to have that decision overruled or modified. Certainly this was one of the principal thrusts of their attempt to appeal under Rule 37.

Nevertheless, assuming that the fields were open and unattended and that there was no probability of destruction of the evidence during the delay attendant upon obtaining a warrant, we are of the opinion that no warrant was necessary to justify the entry of the officers in this case and the seizure of the contraband immediately following lawful observation thereof by a proper aerial overflight.

This was not a case where the officers had a tip or information from a third party. They had actually seen marijuana growing in the fields by their own observation of it, at a time and from a place where they had a lawful right to be. This markedly distinguishes this case from previous decisions in

this state and the distinction, in our opinion, is a controlling one.

■■■ As held by this Court in *Fuqua v. Armour*, 543 S.W.2d 64, 68 (Tenn.1976) contraband possessed in violation of the State's drug control statutes is subject to seizure and forfeiture even if the conduct of police officers violates constitutional rights of those in possession. Police officers and other narcotics enforcement officials have broad authority to seize without process controlled substances possessed in violation of the statutes. T.C.A. § 53–11–409(a). These materials are expressly made subject to forfeiture and may be seized without process if an officer "has probable cause to believe that the property was used or is intended to be used" in violation of the statutes. T.C.A. § 53–11–409(b)(4). Illegal controlled substances are not subject to replevin but are deemed to be in the custody of the Tennessee Bureau of Investigation. Generally they are subject to seizure and summary forfeiture. T.C.A. § 53–11–409(d).

■■ Of course, these statutes may not and do not permit the violation of constitutionally protected interests of citizens. The exclusionary rule, long observed in this state, does not prevent an unlawful seizure but may prevent officers from introducing into evidence wrongfully seized materials or from testifying about its discovery or seizure.

Appellees base their motion to suppress in part upon the Fourth Amendment to the Constitution of the United States. About two weeks before the Court of Criminal Appeals rendered its decision in the present case, however, the Supreme Court of the United States released its decision in *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). In that case the Supreme Court reaffirmed the "open fields" doctrine first announced in *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). The Court by a six-to-three majority held very firmly and decisively that officers do not need a warrant to enter and may search open fields without a warrant. In that case and

in a companion case, *Maine v. Thornton*, there had been no overflight whatever, and the officers simply entered private property from the ground and seized contraband growing thereon. The Supreme Court held in that case that there can be no legitimate expectation of privacy on the part of persons conducting activities in open fields.

Speaking of the Fourth Amendment, the Court said:

"The Amendment reflects the recognition of the Founders that certain enclaves should be free from arbitrary government interference. For example, the Court since the enactment of the Fourth Amendment has stressed 'the overriding respect for the sanctity of the home that has been imbedded in our traditions since the origins of the Republic.' [Citations omitted].

"In contrast, open fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from government interference or surveillance. There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields. Moreover, as a practical matter these lands usually are accessible to the public and the police in ways that a home, an office or commercial structure would not be. It is not generally true that fences or no trespassing signs effectively bar the public from viewing open fields in rural areas. *And both petitioner Oliver and respondent Thornton concede that the public and police lawfully may survey lands from the air.* For these reasons, the asserted expectation of privacy in open fields is not an expectation that 'society recognizes as reasonable.'" 104 S.Ct. at 1741 (emphasis added).

In a footnote to the italicized sentence above, the Court said:

"In practical terms, petitioner Oliver's and respondent Thornton's analysis merely would require law enforcement officers, in most situations, to use aerial surveillance to gather the information necessary to obtain a warrant or to justi-

fy warrantless entry onto the property. *It is not easy to see how such a requirement would advance legitimate privacy interests.*" 104 S.Ct. at 1741 (emphasis added).

■ In view of this holding, in our opinion there can be no question but that the motion to suppress in the present case fails entirely under the Fourth Amendment. The entry of the officers, even without aerial surveillance, would not have violated that Amendment in this case, because there is no question but that the patches of marijuana were found in open fields. There is not shown to have been any farming operation conducted on the premises, and there are no maps or photographs of the areas in which the marijuana was found. We cannot determine from this record that the lands were "wild or wastelands" within the meaning of earlier Tennessee cases, but at the very minimum the marijuana in this case was being grown in open areas from which it had been lawfully observed from the air.

If the motion to suppress can be sustained even in part, therefore, the decision must rest upon state, rather than federal, constitutional principles. Appellees have insisted and the Court of Criminal Appeals held that the decision of this Court in *State v. Lakin*, 588 S.W.2d 544 (Tenn.1979) is controlling and that under the principles stated in that case testimony of the officers about their entry upon appellees' property should have been suppressed.

We are unable to agree with that contention. It is true that in the *Lakin* case the Court made the following statement:

"Ordinarily officers searching occupied, fenced, private property must first obtain consent or a warrant; otherwise they proceed at the risk that evidence obtained may be suppressed. When a warrantless search is challenged, an exception to the search warrant requirement must be shown." 588 S.W.2d at 549.

Language in that case, however, like that of any other appellate opinion, must be analyzed in light of the facts before the

Court. In that case officers had entered fenced private property without a warrant and with no knowledge as to whether the property actually contained contraband of any kind. They had been given a tip that the property might contain (1) a moonshine still or (2) a marijuana patch. The officers did not know this from their own knowledge or observation, and there had been no previous surveillance, aerial or otherwise.

It was under those circumstances that this Court held that officers could not enter such property and conduct thereon an investigative search to try to find contraband, the existence of which was not known to them.

We recognize that in the *Oliver* case, *supra*, the United States Supreme Court held that such an entry was not violative of the Fourth Amendment and that, to that extent, *Lakin* may be contrary to the *Oliver* decision. Nevertheless, in the present case there was a lawful surveillance and overflight. The officers had personal first-hand knowledge, later confirmed by appellees themselves, that contraband was growing on the property of appellees, not within the curtilage of their residence. Under these circumstances in our opinion the officers were entitled to enter without a warrant and to seize that contraband.

We do not find it necessary in this decision to overrule the *Lakin* case, because it simply presented facts different from those here. It was recognized in that decision that the Tennessee cases have been somewhat more restrictive in construing Article I, § 7, of the State Constitution than have federal cases construing the Fourth Amendment. Nevertheless it was recognized in that case that ordinarily the two constitutions should be construed alike where possible. *See* 588 S.W.2d at 549; *see also Sneed v. State*, 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968).

In the present case we are of the opinion that we should follow the lead of the Supreme Court of the United States at least to the extent of holding that no warrant is necessary to enter upon open farmland

where officers have lawfully observed contraband growing thereon, either from an aerial overflight or from lawful ground observation. We agree with the Supreme Court of the United States that no individual can have a legitimate expectation of privacy under those circumstances, and that it would be both impractical and unrealistic to require officers to cease their activity while obtaining a warrant. In our opinion a warrant requirement under such circumstances would in no sense further the exclusionary rule of evidence, the purpose of which is to deter or discourage unreasonable police conduct.

Courts in several other cases have made no distinction between lawful aerial overflight and subsequent entry upon open farm property. On facts practically identical to those here, and in reliance upon *Oliver, supra,* entry and seizure after lawful aerial observation were sustained without a warrant in *United States v. Hoskins,* 735 F.2d 1006 (6th Cir.1984) and in *Wellford v. Commonwealth,* 227 Va. 297, 315 S.E.2d 235 (1984).

On the merits, therefore, as well as on the procedure, we are of the opinion that the Court of Criminal Appeals was in error in partially sustaining the motion to suppress. Its judgment is reversed and that of the trial court is reinstated at the cost of appellees. The cause will be remanded to the trial court for entry of any further orders and for any further proceedings which may be necessary.

COOPER, C.J., and FONES, J. concur.

BROCK and DROWOTA, JJ., file dissents.

BROCK, Justice, dissenting.

I concur in the dissenting opinion of Justice Drowota but, in addition, I wish to herewith set out some of my views.

A. Application of the plain view doctrine:

As the "plain view doctrine" is generally described, one of its requirements is that the officer must "properly be in a position

from which he can view a particular area." *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502 (1983). When the requirements are met, the doctrine validates the warrantless seizure of the object in question. *Id.,* 103 S.Ct. at 1540. However, a distinction has been drawn where the object visible to the officer is located within an area in which the defendant has a privacy interest *which has not yet been intruded upon by the officer and the officer does not have access to the object to physically seize it.* As will be shown below, in such situations, the Supreme Court cases support the position that the viewing by the officer is not a search at all, and that the observation of the object by the officer may give him probable cause but does not itself obviate the need for a warrant for the seizure. A warrant is required, absent an exception to the warrant requirement.

This view is stated in 1 W. LaFave, Search and Seizure § 2.2 (1978). After distinguishing the "nonsearch-plain view" situation (observation without a prior physical intrusion into a constitutionally protected area) from the plain view doctrine outlined in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), he states:

"It is equally important to understand that while the characterization of an observation as a nonsearch plain view situation settles the lawfulness of the observation itself, it does not determine whether a seizure of the observed object would likewise be lawful. Though the Supreme Court in another context has rather loosely asserted that 'objects falling in the plain view of an officer who has a right to be in the position to have the view are subject to seizure,' this is quite clearly not so as to the type of plain view under discussion here. Again Judge Moylan:

'Seeing something in open view does not, of course, dispose ipso facto, of the problem of crossing constitutionally protected thresholds. Those who thoughtlessly over-apply the plain view

doctrine to every situation where there is a visual open view have not yet learned the simple lesson long since mastered by old hands at the burlesque houses, "You can't touch everything you can see." '

'Light waves cross thresholds with a constitutional impunity not permitted arms and legs. Wherever the eye may go, the body of the policeman may not necessarily follow.' " LaFave, *supra,* at 243–44 (footnotes omitted) (quoting Moyland, The Plain View Doctrine: Unexpected Child of the Great "Search Incident" Geography Battle, 26 Mercer L.Rev. 1047, 1096 (1975)).

The Supreme Court appears to have taken the same view. In *Coolidge,* the Court made the following statement:

"Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure." 403 U.S. at 468, 91 S.Ct. at 2039.

*Accord, United States v. Coplen,* 541 F.2d 211, 215 (9th Cir.1976, *cert. denied* 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 791 (1977) (warrant or exigent circumstances required for seizure of parked aircraft after officer looked in window and spotted marijuana debris).

In *Texas v. Brown, supra,* the plurality noted the distinction outlined above. In discussing the plain view doctrine, the plurality spoke in terms of *access* to the property:

"The question whether property in plain view of the police may be seized therefore must turn on the legality of the intrusion that enables them to perceive *and physically seize* the property in question.... '... The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal ac-

tivity.' A different situation is presented, however, when the property in open view is 'situated on private premises to which *access* is not otherwise available for the seizing officer.' [Citations omitted.] As these cases indicate, 'plain view' provides grounds for seizure of an item when an officer's *access* to an object has some prior justification under the Fourth Amendment." 103 S.Ct. at 1540 (footnote omitted). (Emphasis added.)

From the above discussion, it appears that the observation of the contraband gave the officers probable cause to believe that contraband was located on the property. The question of whether a warrant was required in order to intrude upon the property and seize it should be determined in the same manner as if the officer had acquired probable cause through another means, such as through a reliable informant.

### B. Significance of the contraband nature of the property observed:

The contraband nature of the property in question is not of significance. The cases do not distinguish the seizure of contraband and the seizure of other evidence seen in open view from outside a constitutionally protected area. *See Texas v. Brown, supra,* 103 S.Ct. at 1540–41 (lumping together seizure of evidence of a crime, stolen property, contraband, and items otherwise subject to seizure which are in plain view); *Coolidge, supra,* 403 U.S. at 468, 91 S.Ct. at 2039 ("But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that police may not enter and make a warrantless seizure."); *Taylor v. United States,* 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932) (invalidating the warrantless seizure of contraband liquor from a garage where it had been seen by officers from outside the garage).

It is my opinion that the proper analysis in this case is as follows:

(1) The initial observation during aerial surveillance was not a search and was

therefore not violative of the Tennessee or United States Constitution.

(2) The observation gave officers probable cause to believe that marijuana was being cultivated on the property.·

(3) Though the officers had probable cause, the seizure of the contraband required a warrant, absent an exception to the warrant requirement, such as exigent circumstances, or a finding that under the "open fields" doctrine, the area was not constitutionally protected from physical intrusion by officers.

(4) Although the facts of this case might fit under the federal version of the "open fields" doctrine, it does not fit under the more limited Tennessee version of the doctrine, as concluded by Justice Drowota. Also, no exigent circumstances existed.

(5) Therefore, the warrantless seizure of the contraband was invalid as a matter of Tennessee Constitutional law, although it might be valid as a matter of U.S. Constitutional law under the "open fields" doctrine.

(6) Because only the warrantless seizure of the marijuana was improper, Officer Dover's testimony concerning the observations during the aerial surveillance need not be suppressed.

DROWOTA, Justice, dissenting.

Because I believe that the decision of the majority in this case seriously erodes some of the most fundamental protections of the Tennessee Constitution and cannot be supported under the longstanding case law of this State, I respectfully dissent. Although the majority addresses the procedural issues as well as the search and seizure issues, I focus solely on the substantive requirements of Article I, § 7 of the Tennessee Constitution, which provides:

"[t]hat the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offenses are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted."

As a result of the majority opinion, a significant encroachment is made upon the security of Tennesseans from general, unrestrained powers of government agents to search and seize. Regardless of whether the overflight of the helicopter is constitutionally acceptable, under the Tennessee Constitution, a warrant is still required to effect a search or seizure on private property absent exigent circumstances. Moreover, Article XI, § 16 of the State Constitution provides that the rights guaranteed under Article I "shall never be violated on any pretense whatever. And to guard against transgression of the high powers we have delegated, we declare that everything in the bill of rights contained, is excepted out of the General powers of government, and shall forever remain inviolate." I cannot forget that not only is ours a government of laws rather than humans, but it is also a limited government whose legitimacy and survival depend on its remaining within the letter and spirit of the Constitution. *See Hughes v. State,* 176 Tenn. 330, 339, 141 S.W.2d 477, 480 (1940); *Hampton v. State,* 148 Tenn. 155, 159, 252 S.W. 1007, 1008 (1923). With this in mind, I now address the reasoning of the majority.

The majority states that only unreasonable searches and seizures are prohibited by either the state or federal constitutions, and that the reasonableness of the investigating officers' conduct is to be judged under all the circumstances of the incident involved. Even if·this is accepted as a general proposition, this is not the law as to searches of private, occupied premises under the Tennessee Constitution. In a long and uninterrupted line of cases, to which this Court is bound by *stare decisis,* this Court has repeatedly held that a warrant is the standard of reasonableness and is generally required to invade private, residential premises, which includes not just the house but the area used and fenced by the occupants, regardless of the existence

of probable cause to enter the land. *See, e.g., Chico v. State,* 217 Tenn. 19, 394 S.W.2d 648 (1965); *Allison v. State,* 189 Tenn. 67, 222 S.W.2d 366 (1949); *Peters v. State,* 187 Tenn. 455, 215 S.W.2d 822 (1948); *Welch v. State,* 154 Tenn. 60, 289 S.W. 510 (1926). The framers of Article I, § 7 intentionally included the word "possessions" "to limit searches of real and personal property which was in actual possession and occupancy. 'Actual possession' is usually evidenced by occupation, substantial enclosure, cultivation or use. The word 'possessions' would not include wild or waste lands, or other lands that are unoccupied." 22 *Tennessee Jurisprudence,* Searches and Seizures, § 2, pp. 280–281. *See Allison v. State, supra.* Absent some exception to the warrant requirement, a warrantless search is presumed unreasonable under Tennessee law. *See, e.g., Fuqua v. Armour,* 543 S.W.2d 64, 66 (Tenn.1976); *Robertson v. State,* 184 Tenn. 277, 283, 198 S.W.2d 633, 635 (1947); *Kelley v. State,* 184 Tenn. 143, 145, 197 S.W.2d 545, 547 (1946); *Lawson v. State,* 176 Tenn. 457, 459, 143 S.W.2d 716, 717 (1940); *Hughes v. State,* 176 Tenn. 330, 334, 141 S.W.2d 477, 481 (1940); *Byrd v. State,* 161 Tenn. 306, 309, 30 S.W.2d 273 (1929); *Lucarini v. State,* 159 Tenn. 373, 376–377, 19 S.W.2d 239, 240 (1928); *Cravens v. State,* 148 Tenn. 517, 518, 256 S.W. 431, 432 (1923); *Hampton v. State,* 148 Tenn. 155, 159, 252 S.W. 1007, 1008 (1923); *Hughes v. State,* 145 Tenn. 544, 565–566, 238 S.W. 588, 594 (1921). *See also, e.g., State v. Doelman,* 620 S.W.2d 96 (Tenn.Crim.App. 1981); *State v. Shaw,* 603 S.W.2d 741 (Tenn.Crim.App.1980); *Chadwick v. State,* 1 Tenn.Crim.App. 72, 429 S.W.2d 135 (1968).[1] As recently as *State v. Lakin,* 588 S.W.2d 544 (Tenn.1979), and *Fuqua v. Armour, supra,* this Court has reiterated that under Tennessee law "[a] search or a seizure without a warrant ... is the exception, and it exists only under exceptional circumstances." 543 S.W.2d at 66. The

majority states that a finding of exigency is not necessary to its decision, but this is manifestly contrary to the law of this State.

Moreover, *State v. Lakin, supra,* also recognized that the Tennessee Constitution is more protective of property interests than the Fourth Amendment to the United States Constitution. Although this Court has said the two provisions are identical in intent and purpose, *Sneed v. State,* 221 Tenn. 6, 423 S.W.2d 857, 860 (1967), and that the two constitutions should be construed alike where possible, *State v. Lakin,* 588 S.W.2d at 549 n. 2, there are "pronounced linguistic differences in the two provisions." *State v. Berry,* 592 S.W.2d 553, 563 (Tenn.1980) (Henry, J., separate opinion), *cert. denied,* 449 U.S. 887, 101 S.Ct. 241, 66 L.Ed.2d 112 (1980). Appellate courts have also recognized that the Tennessee Constitution is "more protective of private property rights than the Federal Constitution." *State v. Doelman, supra,* 620 S.W.2d at 99. Furthermore, states may provide more expansive rights than those provided by the federal constitution, but a state may not impose greater restrictions on police activity as a matter of federal constitutional law than those which the United States Supreme Court holds to be necessary under federal constitutional standards. *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). *See also,* 1 W. Ringel, Searches & Seizures, Arrests and Confessions, § 2.6, at 2–16.1–2–22 (2d ed. 1984).

In 1926, this Court decided *Welch v. State, supra.* In *Welch,* the sheriff entered a one acre tract of land possessed by the defendant in search of an illegal whiskey operation. The lot was more than 300 yards from the defendant's residence and was used by defendant for confining livestock. The trial judge charged the jury that as a matter of law no search warrant was required. This Court reversed, stating

---

1. Many of these earliest cases involve Prohibition, and thus the only distinction for our purposes is the type of contraband seized (illegal whiskey rather than marijuana), but otherwise

the cases present themselves in a variety of factual settings that bear little upon the conclusions of those courts that a warrant is generally required to search private, occupied lands.

that the word "possessions" as used in the state constitution refers to "property, real or personal, actually possessed or occupied." 154 Tenn. at 62, 289 S.W. at 510. The Court reasoned that the word "possessions" was added to the constitution for a purpose and "means more than houses or mansions...." *Id.* at 62, 289 S.W. at 510. Concluding that the word "houses" in the Tennessee Constitution would include the "curtilage," the framers must have, therefore, intended the word "possessions" to have included more than the "curtilage." The Court noted that the word "possessions" would not include wild or waste lands, or other lands that were unoccupied; but would include the grounds adjoining the dwelling house, and the building thereon, within the same common fence, in daily use in connection with the conduct of family affairs. 154 Tenn. at 63, 289 S.W. at 511.

The holding in *Welch, supra,* has been repeatedly adhered to in subsequent decisions of this Court. In *Peters v. State, supra,* the Court reaffirmed the proposition that "possessions" "includes more than the curtilage." 187 Tenn. at 457, 222 S.W.2d at 823. Similarly, in *Allison v. State, supra,* this Court invalidated a warrantless search where "[t]he wood-lot where the still and nine gallons of illicit whiskey were found was a half-mile from Defendant's dwelling, but the lot was a fenced enclosure used for pasture." 189 Tenn. at 68, 222 S.W.2d at 366.

Departing from such well-established Constitutional law, the decision of the Court in this case takes us a step closer to recreating a general power to search in executive officials without the required sanction or supervision of the judiciary. This Court recognized in *Fuqua v. Armour, supra,* that

"[t]he rights secured by these constitutional provisions are to be regarded as of the very essence of constitutional liberty; they express the conviction that the right to search and seize should not be left to the discretion of the police but should be subject to the requirement of previous judicial sanction wherever possible. 543 S.W.2d at 66 (citations omitted).

While I agree that, under *Oliver v. United States,* 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), and its companion case, the Fourth Amendment provides no protection to these defendants, I cannot agree that the Tennessee Constitution does not protect them. By following the United States Supreme Court in this area, this Court is effectively overruling the long-settled Constitutional Law of Tennessee. Absent a warrant properly obtained, an intrusion so radical as a physical invasion by armed police officers is unreasonable; just such a coercive incursion is precisely what Article I, § 7 is aimed at preventing:

"A 'search' as applied under the provisions of these Constitutions means searches and seizures by an examination of a man's home, buildings, premises, his person, or what not, with a view to the discovery of contraband ... or some evidence of guilt to be used in a criminal prosecution ... and implies invasion and quest which in turn implies some sort of force, actual or constructive, much or little."

*Lester v. State,* 216 Tenn. 615, 619, 393 S.W.2d 288, 290 (1964). As the Court noted in *Cravens v. State, supra,* Mr. Justice Green writing:

"The history of our ancestors for 300 years has demonstrated that police officers cannot be permitted to ransack at will the properties of the people. Intolerable conditions have always followed such practices. A revolution in England and the revolution of the American colonies are said by high authorities to have been largely influenced by promiscuous seizures and searches of the houses and effects of the people—efforts by the constituted authorities to procure evidence of the violation of regulations deemed wise by those in power, but unpopular with many, and constantly transgressed."

148 Tenn. at 518–519, 256 S.W. at 432. In this context of a physical invasion by police

officers, the view from the helicopter, which is not recognized as a search, should be analyzed separately from the actual entry onto the Jennette property to obtain evidence, which is undoubtedly a search. Again, the Court stated as much in *Hughes v. State, supra:*

> "Security from unlawful search is the right guaranteed to the citizen, even for the discovery of the citizen's sins.... The experience of our forefathers with unlawful searches and seizures was deemed by the people who framed the Constitution sufficient to warrant the provision by which in instances even the guilty might escape detection and punishment."

145 Tenn. at 565–566, 238 S.W. at 594. The framers of our Constitution believed that, while contraband would incidentally be shielded by the search and seizure provisions, the greater evil would be a general power to search vested in the government.

Clearly, a forced entry by trespassing, armed police officers onto fenced, occupied, residential premises is not only within the spirit but the letter of Article I, § 7 of the Tennessee Constitution. A warrantless seizure of contraband sighted by aerial surveillance should not ordinarily follow, regardless of how reasonably the officers believe themselves to be acting, absent the requisite exigent circumstances justifying a warrantless entry. This Court recognized in *Lakin v. State, supra,* that

> "[o]rdinarily officers searching occupied, fenced, private property must first obtain consent or a warrant; otherwise they proceed at the risk that evidence obtained may be suppressed. When a warrantless search is challenged, an exception to the *search warrant requirement* must be shown."

588 S.W.2d at 549 (emphasis added).

In the case at bar, the property in question was not "wild and waste land" which might be roamed at will without a search warrant. *See State v. Chico, supra;* and *State v. Welch, supra.* The property was part of the Defendants' farm and they had attempted to keep the property private through the use of a locked gate and no trespassing signs. Although the officers had probable cause to believe contraband was being grown on the property, probable cause alone can never justify a warrantless search. *See, e.g., Fuqua v. Armour,* 543 S.W.2d at 67. Some sort of emergency or exigent circumstances must also exist. *State v. Byerley,* 635 S.W.2d 511 (Tenn. 1982); *State v. Longstreet,* 619 S.W.2d 97 (Tenn.1981); *see also United States v. Fultz,* 622 F.2d 204 (6th Cir.1980), *cert. denied,* 449 U.S. 834, 101 S.Ct. 105, 66 L.Ed.2d 40 (1980). Moreover, while the majority argues that *State v. Roode,* 643 S.W.2d 651 (Tenn.1982), was not bottomed on the existence of exigent circumstances, their presence clearly distinguishes *Roode,* as well as *State v. Layne,* 623 S.W.2d 629 (Tenn.Crim.App.1981), from this case. In those cases, the physical presence of individuals and other activities seen by the officers during the overflight of the property justified their proceeding without a warrant under the exigent circumstances exception. All that was seen by the officers during the overflight in the instant case were the unattended patches of marijuana. Not until the police had actually entered upon the Jennette property could they see Mrs. Jennette do anything that would be interpreted as an impending destruction of evidence—but they had no right to be there to see it at all. *See State v. Byerley,* 635 S.W.2d at 514 (where officers' knowledge of the location or existence of evidence rises to that of probable cause, a warrant is required). Without a warrant and absent exigent circumstances, these officers stood in no better shoes than those of trespassers. *See Hughes v. State,* 176 Tenn. at 339, 141 S.W.2d at 480; *Chadwick v. State,* 1 Tenn.Crim.App. at 81, 429 S.W.2d at 139. *Cf. Sneed v. State,* 221 Tenn. at 13, 423 S.W.2d at 860 ("[the] recognized rule that constitutional rights are not violated when a law officer, without any *trespass* against a defendant, and while he is at a place where he has a right to be, looks and sees evidence ... which is plainly visible.") (emphasis added).

In addition, the majority contends that a valid warrant might have been difficult for these officers to obtain, since they did not have the particularized knowledge necessary to support a warrant, and thus any attempt to do so would have risked loss of the evidence. For the majority, this mitigates in favor of the officers, but to me, permitting officers to invade a person's home and property without knowing whether that person is the likely perpetrator is a general search, against which Article I, § 7 is surely aimed:

> "[O]ur laws prescribe the procedure through which officers may search suspected persons and places, and seize things. There is no writ more calculated to be abused in its use than the search warrant, for with it any home may be entered and the inmates disturbed, humiliated, and degraded. To prevent such a possibility from false informants made to officers inspired by overzeal, or acting from expediency, or obeying the command uttered by a mob impulse, the provisions of the Constitution and statutes found force and command observance."

*Hampton v. State,* 148 Tenn. at 160–161, 252 S.W. at 1008. Further, a local deputy was in the helicopter with Officer Dover and was able to direct the sheriff to the property with sufficient specificity. The case is, as the majority concedes, a close one, and the State—on whom the burden of showing an exception to the warrant requirement falls—has failed to demonstrate any danger that "the administration of the criminal laws of the State [would suffer] had these patrolmen followed the statutory practice instead of taking the law into their own hands." *Hughes v. State,* 176 Tenn. at 341, 141 S.W.2d at 481. Since this is a close case, our cases require that "it is essential that this constitutional guaranty be liberally construed in favor of the individual." *Hughes,* 176 Tenn. at 339, 141 S.W.2d at 480. Thus, cases of doubt must be decided solicitously for the individual and not for the government. These officers had ample opportunity to obtain a warrant while maintaining their surveillance and keeping a contingent prepared to seize the contraband should any exigent circumstances arise during the interim. *Cf. State v. Shaw,* 603 S.W.2d 741, 743–744 (Tenn.Crim.App.1980) (exigent circumstances can arise at any time). At the least, these officers' actions are not clearly reasonable or required under any exigency apparent on these facts, and less intrusive methods could have been used. In *Rippy v. State,* 550 S.W.2d 636 (Tenn.1976), this Court stated that "[t]he mere existence of [exigent] circumstances does not necessarily validate a warrantless search. As pointed out in *Nelson* [459 F.2d 884 (6th Cir. 1972)], the exceptions [to the warrant requirement] are 'jealously and carefully drawn' ... there must be a showing by those asserting the exception that the exigencies of the situation made the search imperative...." *Id.,* at 641.

Despite its distinctions regarding the facts in *Lakin v. State* from those of the present case, the majority has all but overruled *Lakin sub silentio.* Nothing in *Lakin,* nor in any of the cases cited, indicates that, apart from the recognized exceptions to the warrant requirement, the protections of Article I, § 7 depend so definitively on the facts of the case. *See Rippy v. State, supra.* Just such vagaries in factual settings has produced the often confusing and unmanageable case law of the Fourth Amendment to the Federal Constitution. Such after-the-fact review of cases permits a result-oriented analysis that rationalizes the validity of the search by what is found rather than on the purposes of the Constitutional protections from warrantless intrusions.

> "The Constitution of this State protects citizens of this State against unreasonable searches and seizures, and it has been held consistently that officers may not search premises without having a proper search warrant, and that, if such search is made in defiance of the rights of the owner of the premises, any evidence obtained through such unlawful search is inadmissible against the owner in any prosecution."

*Kelley v. State,* 184 Tenn. at 145, 197 S.W.2d at 546.

Further, although the majority asserts that *Fuqua v. Armour, supra,* permits law officers to seize contraband summarily, even if their conduct violates a person's constitutional rights, I do not read *Fuqua* as going that far, and on the contrary that case held that a statute may not authorize any conduct by officers in excess of what the Constitution allows:

> "The fact that probable cause exists for seizure is not enough; there must also exist 'exigent circumstances'; therefore, [T.C.A. § 53–11–409] should be construed as authorizing a seizure without a warrant, upon probable cause, only when 'exigent circumstances' exist justifying summary seizure. 'No amount of probable cause can justify a warrantless search or seizure, absent 'exigent circumstances.' *Coolidge v. New Hampshire, supra.* Thus construed and restricted, [T.C.A. § 53–11–409] may constitutionally be applied."

543 S.W.2d at 68. As stated in *Cravens v. State, supra,* "[t]he enforcement of no statute is of sufficient importance to justify indifference to the basic principles of our government." 148 Tenn. at 520, 256 S.W. at 432.[2]

I am constrained to emphasize the fundamental nature of the rights involved in these cases and repeatedly return to basic concepts upon which our government operates. In *Hughes v. State, supra,* this Court, quoting *Gouled v. United States,* 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647, reaffirmed that

> "Such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty and private property;' that they are to be regarded as of the very essence of constitutional liberty.... It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual

depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned, but mistakenly overzealous, executive officers."

145 Tenn. at 560–561, 238 S.W. at 592–593. See also *Hughes v. State,* 176 Tenn. at 339–340, 141 S.W.2d at 480; *Hampton v. State,* 148 Tenn. at 163, 252 S.W. at 1008–1009.

Under the settled, consistent development of state law interpreting the search and seizure provision of our state constitution, the warrantless search and seizure of property on the Jennette's farm cannot be upheld. I have reconsidered the decisions of this Court construing Article I, Section 7 of the Tennessee Constitution in light of *Oliver, supra,* and do not find them to be erroneous. We should decline to follow *Oliver* because it would require overruling approximately 60 years of well-reasoned case law in this State. Accordingly, I must respectfully dissent.

I am authorized to state that BROCK, J., concurs in this dissent.

---

**2.** The *Cravens* Court also noted that "[w]e can conceive of no exigency in time of peace that could induce this court to weaken the barriers put up by our fathers to prevent the abuse of [search warrants]." *Id.*