STATE of Tennessee, Appellant,

v.

Thomas HENDRIX, Sr., Thomas Hendrix, Jr., Sandra Mashke and Harold Bradshaw, Appellees.

Supreme Court of Tennessee,
at Nashville.

Dec. 4, 1989.

W.J. Michael Cody, Atty. Gen. and Reporter, Kimberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville, for appellant.

Niles S. Nimmo, Nashville, for Thomas Hendrix, Sr.

Roger Reid Street, Jr., Franklin, for Thomas Hendrix, Jr.

Michael D. Noel, Nashville, for Sandra Mashke.

Sumter L. Camp and Lionel R. Barrett, Jr., Nashville, for Harold Bradshaw.

## OPINION

O'BRIEN, Justice.

The Davidson County Grand Jury returned a four-count indictment charging Thomas Hendrix, Sr., Thomas Hendrix, Jr. and Sandra Mashke with possession of cocaine for the purpose of resale; possession of a firearm during the commission of a felony; and concealing stolen property valued over $200. Harold Bradshaw was charged with simple possession of cocaine. Hendrix, Sr. and Jr. and Sandra Mashke pled guilty to possession of cocaine for the purpose of resale. Bradshaw pled guilty to simple possession of cocaine. In conjunction with their guilty pleas each undertook to reserve, with the consent of the trial court, a question of law for review on appeal, pursuant to Rule 37(b)(2), Tenn.R. Crim.P.[1]

Rule 37(b)(2)(i) and (iv) provides:

37(b) An appeal lies from any order or judgment in a criminal proceeding where the law provides for such an appeal, and from any judgment of conviction:

(2) Upon a plea of guilty or nolo contendre if:

---

1. Defendants Thomas Hendrix, Jr., and Harold Bradshaw have also cited T.R.A.P. Rule 3(b) as authority for their appeals.

(i) Defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the State and of the court the right to appeal a certified question of law that is dispositive of the case; or

(iv) Defendant explicitly reserved with the consent of the court the right to appeal a certified question of law that is dispositive of the case.

The motion to suppress in this case was heard on 21 March 1986. The submission of guilty pleas and sentencing of the defendants occurred on 1 July 1986. On 20 January 1986 the opinion of this Court was released in *State v. Jennette*, 706 S.W.2d 614 (Tenn.1986). In that case the Court said explicitly that any question sought to be presented under Rule 37 following conviction on a guilty plea, should (1) be precisely stated in the order of the trial court certifying the question and (2) be dispositive of the case if the trial court is in error. In regard to the first requirement in *Jennette*, only Hendrix, Sr. and Mashke made any attempt to comply with this rule. Moreover, there is nothing in the record to determine whether the issue sought to be appealed is dispositive of the case for any of the defendants.

The Court of Criminal Appeals accepted the case for review. The issue they found to be dispositive of the question on appeal was whether police may rely on exigent circumstances to support a warrantless search when the exigency has been created by the action of the officers themselves. They concluded the police conduct in this case was unconstitutional, set aside the convictions and dismissed the charges against the defendants.

Because the procedure involved in appeals of this nature had not been precisely stated prior to *Jennette*, and because we conclude the Court of Criminal Appeals fell into error, we reverse and reinstate the judgment of the trial court.

We accept the factual background stated by the Court of Criminal Appeals. A metro vice officer received information from an informant, whom he found to be credible, on 7 May 1985 that drugs found in his possession had been purchased at a residence occupied by Hendrix, Sr. and Sandra Mashke. Hendrix, Jr. occasionally stayed at the house and all three were engaged in the sale of drugs at the residence. At that point the officer had sufficient probable cause to seek a search warrant for the Hendrix residence, but did not. For the next week he kept the Hendrix residence under intermittent surveillance "on maybe two or three occasions." He saw vehicles coming and going in a pattern consistent with drug-dealing. On 15 May he observed heavy traffic at the house and reported his observations to his superior officer. Together they decided they would try "a phone rip-off" on the location because, in their view, they lacked probable cause at the time to obtain a search warrant.

They arranged the set-up with one or two officers observing the Hendrix house while another went to a convenience market and telephoned the residence. He asked for "Tommy," received an affirmative response and warned him that the police were on their way to the house with a search warrant. He informed the observing officers by radio that the call had been made. The officers on post watched most of the lights in the house go off. They were able to observe a great deal of activity in the house for approximately three or four minutes, then the lights came back on. Hendrix, Jr. and Mashke exited the residence. At the same time a van driven by Harold Bradshaw pulled into the driveway, then backed out to allow Hendrix, Jr. and Mashke to drive away in a Lincoln Continental automobile owned by Hendrix, Sr.

An officer followed the Lincoln which traveled for a short distance and turned into a driveway on another street. The officer saw the pair walking away from the parked car and detained them while he radioed for help. When the sergeant in charge arrived to question the two suspects, the first officer on the scene shined the beam of his flashlight inside the passenger compartment. He saw a set of scales of a type commonly used for weighing cocaine and a lock box on the back seat. A large suitcase, and a bottle of Inositol

powder, commonly used to dilute cocaine, were on the front seat. He opened the suitcase and found weapons inside. When he removed the scales and lock box from the back seat he observed a plastic bag of cocaine. A search warrant was subsequently obtained to open the lock box which contained a larger quantity of cocaine in plastic bags.

Bradshaw was observed to enter the house, remain a short time, and emerge in the company of another person. He entered his van and drove away. An officer stopped him a short distance from the house. A vial of cocaine and a package of cigarette papers were observed lying on top of the engine box in the front of the van. He was advised of his rights and stated that these items came from the Hendrix residence. He had carried them away at the request of Hendrix, Sr.

After they were charged the defendants filed motions to suppress the drugs and drug paraphernalia seized by the police at the time of their arrest. Suppression was denied by the trial judge, who gave no reason on the record for his ruling. The defendants entered their guilty pleas and endeavored to reserve for appeal the question of the trial judge's denial of their motions to suppress, as noted heretofore.

In a strongly worded opinion the Court of Criminal Appeals found that probable cause existed and there was no reason why the arresting officers should have decided to bypass the warrant requirement when they had recently obtained information from a reliable informant, based on personal knowledge and verified in detail by independent police confirmation, to support the issuance of a valid search warrant. Although well documented with authorities from other jurisdictions the intermediate court noted that research failed to disclose any court willing to approve reliance on exigent circumstances actually contrived by law enforcement officials themselves. Of course, the converse is equally true, research fails to disclose any court which has disapproved reliance on exigent circumstances contrived by law enforcement officials under similar circumstances.

Concluding that "the appropriate rule to be applied in such a situation is that the State may not profit by an officer's choice to forego the constitutional process by attempting to create an exigency by his own actions" the court held that the seizure of the evidence that led to the conviction of these defendants violated the requirements of the Fourth Amendment and reversed the judgment of the trial court.

Had the officers in this case, after a delay in seeking a warrant, made a subsequent warrantless entry of the Hendrix residence based on an artificially created exigency contrived by them perhaps the results would be different. There was no entry or attempt to search the residence in this case. Therefore the majority of the reported cases cited in the intermediate court opinion do not apply. Rather, the actions of the police in this case more closely resemble entrapment and it is not at all strange that the greater number of cases containing any discussion of similar conduct are cases of that nature. In *Hagemaker v. State*, 347 S.W.2d 488, 490, 208 Tenn. 565 (1961), the late Chief Justice Alan M. Prewitt defined entrapment, citing from 22 C.J.S. Criminal Law, § 45:

"One who is instigated, induced, or lured by an officer of the law or other person, for the purpose of prosecution, into the commission of a crime which he had otherwise no intention of committing may avail himself of the defense of 'entrapment.' Such defense is not available, however, where the officer or other person acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by one who had requisite criminal intent."

It has long been held that some deception on the part of the police is constitutionally permissible. Not an hour of any day passes in which there are not thousands of law enforcement officers across this nation engaged in ferreting out organized criminal activities by the use of some subterfuge or covert activity. In *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77

L.Ed. 413 (1932), the Court had this to say on the subject:

"It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. (Authorities omitted). The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal conspiracy, or other offenses, and thus to disclose the would-be violators of· the law...."

In *Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 426, 17 L.Ed.2d 312 (1966), the court remarking on earlier decisions dating back nearly a hundred years, noted that, "both petitioner and the government recognize the necessity for some undercover police activity and both concede that the particular circumstances of each case govern the admissibility of evidence obtained by stratagem or deception. Indeed it has long been acknowledged that, in the detection of many types of crime, the government is entitled to use decoys and to conceal the identity of its agents."

In *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 1649, 36 L.Ed.2d 366 (1973), Justice Stewart, writing in dissent, commented:

"This does not mean of course, that the Government's use of undercover activity, strategy, or deception is necessarily unlawful. Indeed, many crimes, especially so-called victimless crimes, could not otherwise be detected. Thus, government agents may engage in conduct that is likely, when objectively considered, to afford a person ready and willing to commit the crime an opportunity to do so." (Citations omitted).

In this case several questions must be asked. Are the officers subject to criticism for failure to seek a search warrant? We think not. Their phone call was not used as a subterfuge to enter and search the dwelling. The United States Supreme Court has said, "... The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect ... Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction." *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966). Also see *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 2472, 41 L.Ed.2d 325 (1974).

■ Was their action in making the phone call to the Hendrix residence illegal or unlawful? The answer must be that it was not. Did they tempt, induce, or entice the defendants to commit any criminal offense? They did not. They did no more than precipitate departure of Hendrix, Jr. and Mashke from the residence when they flushed the quarry with their telephone call. Was there any constitutional right of defendant abrogated by the action of the police? The answer to that question too must be no. The cases cited by defendants, as observed by the appellate court, concern artificially created exigencies involving the approach of a residence by police, after a delay in seeking a warrant, and a subsequent warrantless entry based on exigencies created by their approach. In this case exigent circumstances occurred when the automobile driven by Mashke, with Hendrix, Jr. as a passenger, turned into a darkened, shrub obscured driveway, approximately half a block from the Hendrix residence, on property in which neither had a proprietary interest. Both occupants of the car exited and began walking away. The officer who had followed them held them until assistance arrived. Actually there was not a search of either the Lincoln Continental or the Bradshaw van which was stopped under similar circumstances. There was contraband in plain view in both vehicles.

■ Under the facts as we have related them, we do not find the seizure of the

controlled substances from either the Hendrix or the Bradshaw vehicle to be violative of their Fourth Amendment rights. Moreover, in view of the undisputed existence of other undisclosed incriminating evidence in the record that question alone would not be dispositive of the case. The judgment of the Court of Criminal Appeals is reversed and that of the trial court reinstated at the cost of the appellees. The case will be remanded to the trial court for any further proceedings required.

COOPER and FONES, JJ., concur.

HARBISON, J., concurs by separate opinion in which FONES, J., joins.

DROWOTA, C.J., dissents by separate opinion.

HARBISON, Justice, concurring.

While I recognize the validity of the principles of law stated in the opinion of the Court of Criminal Appeals, I do not believe that they control here.

As pointed out in the majority opinion, this case reached the appellate courts on what was supposed to be a certified question of law pursuant to Rule 37(b)(2), Tennessee Rules of Criminal Procedure. Questions should be accepted under that rule only if they are dispositive of the case. At the beginning of its opinion the Court of Criminal Appeals sustained the contentions of the four accused persons, without making any differentiation among the four, but then it concluded its opinion by remanding the case to the trial court for further proceedings. Inferentially the Court of Criminal Appeals indicated that the trial court could retry the defendants, although the Court of Criminal Appeals stated that it felt that retrial would be futile without the evidence in question.

In my opinion this is not a proper disposition of a Rule 37 appeal. If the question was dispositive, then the charges should have been dismissed. If it was not dispositive, the convictions should have been affirmed. "Retrial" is not contemplated under the procedural rule involved.

As pointed out in the majority opinion, the question attempted to be certified was not dispositive as to Hendrix Sr., as to whom the District Attorney stated that additional evidence, not involved in the search, was possessed by the State. This statement was not denied. None of the defendants offered any proof in the matter.

In my opinion Hendrix Sr., and possibly defendant Mashke, are the only persons who might complain of the failure of police officials to obtain a search warrant for the Hendrix residence. The defendant Bradshaw was not present when the telephone call in question was made to the residence, and he apparently drove up to the scene unaware of the phone call. He injected himself into an attempt to conceal the contraband, and I fail to see how he would be entitled to complain of the failure of the police to obtain a search warrant for the Hendrix residence at an earlier date. The same is true as to Hendrix Jr. and Mashke in connection with their fleeing from the residence in their automobile. These defendants were not immunized to commit criminal acts on the streets because the police had not previously obtained a warrant to enter the Hendrix, Sr. residence. As stated, as to Hendrix Sr. there was other evidence to support the conviction, and the issue which he sought to appeal was not dispositive.

For these additional reasons I concur in the majority opinion. I am authorized to state that Justice FONES joins in this concurring opinion.

DROWOTA, Chief Justice, dissenting.

I respectfully dissent. I am in full agreement with the well reasoned and well researched opinion of the Court of Criminal Appeals. The cardinal issue on appeal, one which has not been previously addressed by this Court, is whether police may rely on exigent circumstances to support a warrantless search when the exigency has been created by the action of the officers themselves. The Court of Criminal Appeals held that "Virtually every court that has addressed this question has held that the seizure of evidence under such circumstances violates the Fourth Amendment."

Judge Daughtrey, writing for a unanimous Court, concluded that the police conduct in this case [manufacturing the exigent circumstances] was unconstitutional. I feel the majority opinion of this Court erodes the constitutional protections provided by the Fourth Amendment. By creating their own exigent circumstances the police have established a dangerous precedent allowing them to circumvent the judicial process in dispensing with the judgment of a neutral, detached magistrate.

On May 8, when the metro vice officer confirmed the informant's reliability, he had sufficient probable cause to secure a search warrant for the Hendrix house. The officer's personal surveillance of the residence over the next several days further verified drug trafficking at the residence. On May 15, it was clear that sufficient probable cause existed to support the issuance of a warrant. Yet, instead of submitting the information they had gathered to a magistrate, the police deliberately decided to bypass the warrant requirement and flush the evidence into the open with the "phone rip-off." The Court of Criminal Appeals emphasize that there had been a deliberate unjustifiable delay in seeking a search warrant and that under those circumstances the government cannot be allowed to rely on an expected exigency to avoid the inconvenience of obtaining a search warrant. The heart of the Court's ruling, however, was that the police themselves had actually contrived the exigent circumstances justifying the warrantless search and seizure.

The majority opinion indicates that "perhaps the results would be different" had the officers in this case, after a delay in seeking a warrant, made a subsequent warrantless entry of the Hendrix *residence* [rather than the vehicle] based on an artificially created exigency contrived by the police. The Court of Criminal Appeals opinion rejected the state's attempt to justify the warrantless action by police on the basis of the fact that it involved a vehicle and not the search of a residence. The Court stated:

"As the United States Supreme Court has noted, '[t]he word "automobile" is not a talisman in whose presence the Fourth Amendment fades away and disappears.' *Coolidge v. New Hampshire*, 403 U.S. 443, 461–62 [91 S.Ct. 2022, 2035–36, 29 L.Ed.2d 564] (1971). The search of the Hendrix and Bradshaw vehicles and seizure of items from them resulted directly from impermissible police activity in creating an artificial exigency involving the Hendrix residence. The possibility that the occupants of the house would flee, carrying evidence outside the house with them, was not only a foreseeable result of the 'phone rip-off,' it was also the very result the officers hoped to produce when they decided to intervene directly in events rather than present their case to a magistrate and request a warrant. There are no 'countervailing factors' evident—no indication prior to the police telephone call that those inside the house knew they were being watched, no suggestion that evidence was in danger of being removed or destroyed, and no proof that the suspects were attempting to escape police detection. [Citations omitted.] ... The occupants did not leave the scene in the Lincoln in the natural flow of events, but only as the result of police action. [Citation omitted.] Moreover, the police testified that they stopped Bradshaw as a direct consequence of his presence at the scene of the 'telephone rip-off.'"

I agree with the Court of Criminal Appeals that *but for* the telephone call none of the evidence retrieved would have been in the vehicles where it was found by the police. *But for* the telephone call, none of the defendants stopped would have been where they were when stopped.

The Court of Criminal Appeals concluded by stating:

"Like the court in *Hardwick v. State*, [149 Ga.App. 291], 254 S.E.2d 384, 387 (Ga.App.1979), we do not 'inten[d] by this opinion to place more roadblocks in the way of law enforcement officers attempting to perform their duties.' But, also like the *Hardwick* court, we cannot condone the 'erosion, by way of subterfuge, of constitutionally protected rights to be free of unreasonable searches and seizures....' *Id.* As one of our sister

courts put it, '[t]o approve the consequences of such [police activity as this] would render fourth amendment protections vulnerable to possibly even more imaginative government-created exigencies and quickly render the warrant requirement a nullity.' *People v. Wilson,* [86 Ill.App.3d 637, 42 Ill.Dec. 279] 408 N.E.2d 988, 992 (Ill.App.1980). And, finally, like the court in *Latham v. Sullivan,* 295 N.W.2d 472, 478 (Iowa App. 1980), we conclude that 'the appropriate rule to be applied in such a situation is that the State may not profit by an officer's choice to forego the constitutional process by attempting to create an exigency by his own actions.' "

I concur in the holding of the Court of Criminal Appeals that the seizure of the evidence that led to the conviction of the defendants in this case violated the requirements of the Fourth Amendment.

## ORDER ON PETITION TO REHEAR

O'BRIEN, Justice.

Defendants Thomas Andrew Hendrix, Sr. and Harold Bradshaw have filed thoughtful and respectful petitions to rehear in this cause, asserting that the majority opinion misapprehends the law and the facts in the case.

After careful consideration the majority of the Court conclude the correct result was reached in its original and concurring opinion.

DROWOTA, C.J., stands on his dissent.

FONES and COOPER, JJ., concur.

Separate concurring opinion, HARBISON, J.

Dissenting opinion, DROWOTA, C.J.