[Nos. G025069, G026061. Fourth Dist., Div. Three. Aug. 15, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
MANUEL HENRY REYES, Defendant and Appellant.

**8**

COUNSEL

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Rhonda L. Cartwright-Ladendorf and Melissa A. Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CROSBY, J.—Manuel Henry Reyes pleaded guilty to possession of methamphetamine after the superior court denied his motion to suppress. Reyes contends the use of a ruse by the police led to an unlawful detention and any consent to a warrantless search of his person was a product of that illegality. We agree and reverse.

I

On the afternoon of October 12, 1998, five narcotics officers from the Anaheim Police Department, led by investigator Michael Haggerty, went to

a local apartment. Their mission was to conduct a narcotics investigation at a residence occupied by a parolee, Deborah Ann Leathers. The plan was simple enough: employ a ruse to get "the door [of the apartment] open." They planned to ask to search anyone who came outside.

A registration check revealed a white truck parked in the alley behind the apartment building belonged to one Manuel Reyes. Haggerty, garbed in jeans and a T-shirt, walked up to the front door. Peering through a closed screen door, the officer saw defendant inside the living room and asked whether he owned the white truck parked in the alley. Reyes responded, "Yes, why?" Haggerty falsely stated he had struck the truck.

Reyes swallowed the bait and walked outside to the alley with Haggerty. Three officers, two attired in full "ninja-style" raid gear, including black masks and bulletproof vests emblazoned with "POLICE" markings, approached defendant. A lieutenant was in civilian attire. When Haggerty rejoined his comrades, he was wearing his black tactical uniform.

Officer Jeremy Blair identified himself and asked if he could speak to Reyes. Defendant agreed, and the officer asked if he was on parole or probation. Reyes stated he was not. Asked whether he had any narcotics on his person, defendant replied, "I don't think so." According to Blair, Reyes gave his consent to be searched "for illegal narcotics." He found three plastic baggies containing methamphetamine in defendant's shirt pocket.

Reyes testified he was watching television with two friends in the apartment he shared with Leathers, his fiancée. Haggerty opened the screen door, stuck his head in, and told him he had backed into a white truck in the alley. Reyes asked Haggerty to repeat what he had said, and the latter walked inside the apartment to retell his story.

When Reyes went outside to examine his truck, four or five masked officers confronted him in the alley. Defendant was ordered to put his hands behind his back. One officer pinned his thumbs and searched his pockets. Another asked Reyes for his consent to a search of his person for weapons. Reyes responded, "What difference does it make, you've already done it."

The initial version of the police report (dated October 13, 1998) failed to mention the ruse. Instead, it stated the officers first observed Reyes leaving the apartment and walking towards the alley. Two months later, at the direction of the deputy district attorney assigned to the case, Haggerty filed a supplemental report describing the ruse.

The prosecution defended the warrantless search below by arguing the ruse was proper and defendant freely and voluntarily gave his consent to search. The court denied the motion to suppress, finding the officers did not need probable cause to search because the ruse was used to lure defendant *outside* the apartment, and not to effect an *entry* into the premises, and the search in the alley was the product of defendant's voluntary consent, not police illegality.

## II

■ Defendant renews his contention here that police trickery vitiated his consent to search his person. We concur, but recognize that this is a difficult and unsettled area of Fourth Amendment jurisprudence. The undoubted necessity of allowing the police a free hand in undercover operations to fight crime on its own turf is in tension with the privacy rights of the public.

In this instance, because the police lure was one that almost no one, crooked or not, would refuse, we think the police went too far and that defendant's cooperation was involuntary from the outset. We would not find that to have been the case, however, had the undercover officer invited Reyes to step outside to engage in some sort of criminal activity. The law tolerates that type of deception, so long as it is not accompanied by inappropriate inducements or pressure, because it poses no threat to the honest citizen, only to those predisposed to criminal behavior. (See *Lewis v. United States* (1966) 385 U.S. 206 [87 S.Ct. 424, 17 L.Ed.2d 312].)

In *People v. Reeves* (1964) 61 Cal.2d 268 [38 Cal.Rptr. 1, 391 P.2d 393], officers had a hotel manager falsely tell a guest there was a registered letter for him at the front desk. This induced the guest to leave his room, allowing the officers to observe marijuana inside when he opened the door. The Supreme Court ruled that the subterfuge rendered the ensuing search and seizure invalid. (*Id.* at p. 273; see also *People v. Mesaris* (1970) 14 Cal.App.3d 71 [91 Cal.Rptr. 837]; *People v. Miller* (1967) 248 Cal.App.2d 731 [56 Cal.Rptr. 865].)

By contrast, in *People v. Rand* (1972) 23 Cal.App.3d 579 [100 Cal.Rptr. 473], police were tipped that narcotics activity was afoot at the defendant's home. Officers surrounded the residence and telephoned the defendant with a "warning" that " 'the police are coming; get rid of the stuff.' " (*Id.* at p. 582.) The defendant fled from the premises, only to be stopped by a police

officer. Questioned about narcotics, the defendant discarded a container of drugs and was placed under arrest. Citing *Reeves*, the defense argued the evidence should be suppressed as the product of an illegal police ruse. The appellate court disagreed: "[W]ere we to accept the defense argument . . . all under-cover activity would likewise be proscribed. Where the ruse does no more than to cause a defendant, activated by his own decision, to do an incriminating act—whether that act be a sale to an undercover agent or a jettisoning of incriminating material—no illegality exists." (*Id.* at p. 583; see also *State v. Hendrix* (Tenn. 1989) 782 S.W.2d 833, 836 [reaching similar result on similar facts].)

Seven years later a different appellate court, faced with "an almost identical fact situation," felt "compelled to follow *Rand.*" (*People v. Porras* (1979) 99 Cal.App.3d 874, 878 [160 Cal.Rptr. 627].) But the court noted its ruling was not without certain "reservations" and "invite[d] the California Supreme Court to consider the validity of such a ruse in light of the right of privacy and *People* v. *Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333]." (*Id.* at pp. 878-879.) Acknowledging the " ' "right to privacy is the right to be left alone," ' " the court observed, "[I]t might be argued that [the defendant's] right to be left alone in his home was violated when the police telephoned him." (*Id.* at p. 879.) The court continued, "Since the police did not have an arrest warrant (or a search warrant), the ruse could be viewed as a device to avoid the holding in *Ramey* (and the requirement for a search warrant)." (*Id.* at p. 880.)

A divided panel of this court dealt with a different sort of ruse issue in *People v. Avalos* (1996) 47 Cal.App.4th 1569 [55 Cal.Rptr.2d 450]. In *Avalos* officers armed with information obtained from a confidential informant launched a narcotics investigation and followed the defendant to a commercial storage unit. He emerged carrying a box smaller than the one he brought into the facility. Officers stopped the defendant's truck and requested permission to search the vehicle for property stolen in a burglary and " 'other contraband.' " (*Id.* at p. 1575.) Avalos signed a consent-to-search form. Five pounds of methamphetamine were found in a box inside the truck.

Avalos filed a motion to suppress, claiming the police ruse negated his consent to the search. By a two-to-one margin, this court disagreed: "[W]hile police deception as to the purpose of the search is relevant in assessing a suspect's consent, it cannot be analyzed in a vacuum without reference to the surrounding circumstances. [Citations.]" (*People v. Avalos, supra,* 47 Cal.App.4th at p. 1578.) Because the officers identified themselves and "merely made a partial misrepresentation concerning the object of the

search," the majority concluded the defendant was not materially misled "as to the privacy rights he was surrendering. Nor can it be said the consent was involuntary." (*Id.* at p. 1579.)

The majority's position was based, at least in part, on the following from Professor LaFave: "[It cannot] be said that this particular type of deception, misrepresentation of the crime under investigation by one known to be a police officer, is as threatening to the general public's feelings of security and privacy as certain other misrepresentations, *such as an officer posing as a meter reader.* Unlike the latter form of deception, a misrepresentation of the crime under investigation is likely to produce a consent which would otherwise be refused only from a person who is guilty of the undisclosed crime." (3 LaFave, Search & Seizure: A Treatise on the Fourth Amendment (3d ed. 1996) § 8.2(n), p. 710, italics added, fns. omitted.) This distinction is the germ of the rule we will apply today.

The majority opinion in *Avalos* is distinguishable on its facts, of course.[1] There, the officers did nothing to lure the defendant into motion. They made a straightforward vehicle stop after his behavior tended to substantiate an informant's tip, and they immediately identified themselves, albeit misrepresenting the purpose and scope of their intended search. Here, the officers—with no reliable information implicating Reyes in anything—lured him into a highly intimidating situation and asked accusatory questions concerning parole, probation, and whether he possessed narcotics. Unlike that of the defendant in *People v. Rand, supra,* 23 Cal.App.3d 579, his response to the ruse, i.e., exiting to inspect his allegedly damaged vehicle, was not incriminating or criminally motivated.

This, we think, is the appropriate analysis: A deception used to gain entry into a home and a ruse that lures a suspect out of a residence is a distinction without much difference. Privacy rights are invaded in each situation, although one may be somewhat less intrusive than the other. Rather, in those instances where the identity of the officers is not known to the responding

---

[1]Although we need not go that far today, in his *Avalos* dissent, Presiding Justice Sills flatly expressed the view that a consent to search obtained by means of deception or subterfuge is invalid and noted that "Professor LaFave['s] approach . . . is in direct conflict with our state law. (See 4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) § 2290, pp. 2690-2691.) [¶] . . . The prosecution must prove by a preponderance of the evidence that consent was not given in reliance on the initial falsehood. [Citation.] Here, no such showing was even attempted; the prosecution thought it unnecessary. At the very least, a remand is required for a hearing at which the prosecution must show that Avalos did not rely on the deception when he gave his consent." (*People v. Avalos, supra,* 47 Cal.App.4th at p. 1585 (dis. opn. of Sills, P. J.).)

party, we think the dispositive issue ought to be the nature of the ruse employed. Would "the specific circumstances surrounding the ruse . . . tend to undermine the voluntariness of the consent"? (*State v. Nedergard* (1988) 51 Wash.App. 304 [753 P.2d 526, 528].)

Reyes was in a private apartment where he had every right to be. The officers had no warrant for his arrest or even probable cause to arrest him, the distinguishing feature in many of the cases in which ruses have been upheld. But, most importantly, they lured him outside with a trick unrelated to criminal activity, one that undermined the voluntariness of the consent. Put another way, the net used would have scooped up the innocent as well as the guilty; and this particular way of fishing for criminals is inconsistent with the state's obligation to respect the privacy of its citizens. Professor LaFave has made the same point in discussing *State v. Hendrix, supra,* 782 S.W.2d 833, a case of the *Rand-Porras* variety: "It would seem, however, that the result might well be different if the telephone call had requested evacuation of the building because of some falsely-asserted emergency (e.g., a gas leak)." (3 LaFave, Search & Seizure: A Treatise on the Fourth Amendment, *supra,* § 8.2(m), p. 703, fn. 310.)[2]

An officer concealing his identity employed a ruse to lure Reyes into the clutches of a formidable narcotics unit with no basis to detain him. This was hardly a consensual encounter. (See, e.g., *People v. Lopez* (1989) 212 Cal.App.3d 289, 292 [260 Cal.Rptr. 641] ["questions of a sufficiently accusatory nature may by themselves be cause to view an encounter as a nonconsensual detention"]; see also *Wilson v. Superior Court* (1983) 34 Cal.3d 777, 790-791 [195 Cal.Rptr. 671, 670 P.2d 325].) Reyes was just as much the victim of an illegal detention as the driver of a vehicle stopped without reasonable cause. That said, we must now turn briefly to the question of the legality of his alleged consent to the search of his person.

That consent was clearly the product of the tainted police conduct. *Reeves* leads to the inexorable conclusion that Haggerty's trickery " 'render[ed the] search and seizure invalid.' " (*People v. Reeves, supra,* 61 Cal.2d at p. 273.) ▋ It is well settled a consent to search following an illegal police ruse " 'is inextricably bound up with the illegal conduct and cannot be segregated therefrom.' " (4 Witkin & Epstein, Cal. Criminal Law, *supra,* § 2288, p. 2688.) ▋ Defendant's consent was not effective to justify the search of his person.

---

[2]Interestingly, *Hendrix* recognizes the potential application of entrapment theory in its discussion, as have other cases dealing with ruse problems. (*State v. Hendrix, supra,* 782 S.W.2d at p. 835.) And the rule we apply today is at least a second cousin to general entrapment principles.

The judgment is reversed with directions to grant the motion to suppress.

Sills, P. J., and O'Leary, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 29, 2000.