IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 18, 2018 Session

## STATE OF TENNESSEE v. KAYLA MARIE ANDERSON

**Appeal from the Circuit Court for Maury County**
**No. 24936    David L. Allen, Judge**

_____

**No. M2018-00015-CCA-R3-CD**

_____

The Defendant, Kayla Marie Anderson, pled nolo contendere to theft of property valued over five hundred dollars for her role in arranging a drug transaction during which the victim was robbed. The Defendant preserved as certified questions several issues related to her arrest, her interview, and the search of her telephone pursuant to two separate warrants. Because the record reveals the existence of inculpatory evidence not derived from the arrest, interview, or search, we determine that the questions are not dispositive and dismiss the appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

Brandon E. White, Columbia, Tennessee, for the appellant, Kayla Marie Anderson.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Caleb Bayless, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

On December 24, 2015, the victim, Holly H., contacted the Defendant by telephone in hopes of purchasing "roxies," an opioid pill, from the Defendant. In the course of the drug transaction, two men assaulted the victim in her vehicle and robbed her of a laptop. Law enforcement searched the Defendant's telephone pursuant to a warrant

and discovered that the Defendant had sold the victim's laptop immediately after the robbery, and the Defendant was charged with robbery through a theory of criminal responsibility and with theft of property valued at five hundred dollars or less. The Defendant challenged the first search warrant on numerous grounds.

The facts underlying the offense and the investigation were introduced at the hearing on the first motion to suppress held on December 9, 2016. Detective Bryon Stoker of the Columbia Police Department testified that the victim told him that she had contacted a woman named Kayla, whose last name she did not know, about purchasing pills. According to the victim, Kayla stated that she would not be able to meet the victim for the drug transaction but that she would be "sending her boyfriend." The victim gave a physical description of Kayla which fit the Defendant "to the T." The victim likewise indicated that she had purchased drugs from Kayla in the past, and she described the location of the previous transaction as "on Nowlin Court next to the big trash can that was sitting in front of her house at the time." Detective Stoker testified that the address helped him identify the Defendant, and the record reveals that the Defendant resided on Nowlin Court.

The first search warrant, which all the parties ultimately agreed was defective, stated that the victim arrived at the site of the prearranged drug transaction, that two men entered her car, and that the victim was punched, strangled, and bitten in the course of the robbery. The two men absconded with the victim's bag, which contained a laptop. Detective Stoker testified at the suppression hearing that the offenders, however, left behind evidence in the form of a telephone abandoned in the victim's vehicle. This telephone led police to connect Mr. Leslie Sparkman to the offense. At first, Detective Stoker was not aware that the Defendant and Mr. Sparkman were in a relationship, but he acquired the information "in between the cell phone dumps" because he discovered messages exchanged by the Defendant and Mr. Sparkman. Asked if he was referring to the cell phone seized from the Defendant or the one left in the vehicle, he responded, "No, we got it from [hers], too. Got it from [hers,] too. But we — I think we were under the assumption that the phone that was left inside that car came from Leslie Sparkman." Mr. Sparkman pled guilty to robbery prior to the resolution of the Defendant's case.

Detective Stoker described the Defendant as a "person of interest" at this point in the investigation. Officer Landen Barber came into contact with the Defendant on December 31, 2015, when he was investigating an unrelated incident at a trailer park and witnessed the Defendant driving a car. Officer Barber was aware that the Defendant's license had been revoked, and he confirmed this fact through dispatch. He then arrested the Defendant for driving on a revoked license, and pursuant to Detective Stoker's request, he brought her to the police station so that Detective Stoker could question her about the robbery. The Defendant was informed of her *Miranda* rights, and she agreed to

speak with Detective Stoker. The videotape of the interview reveals that she had the telephone which was the subject of the subsequent search warrants in her possession while she was speaking with Detective Stoker.

During the interview, the Defendant told Detective Stoker that her previous telephone, a laptop computer, and forty-five dollars were stolen from her home a week prior to her arrest. She described the stolen telephone and agreed that a photograph which Detective Stoker showed her resembled her stolen telephone. Detective Stoker revealed that the telephone in the photograph was recovered from the scene of a robbery and assault. When the Defendant again asserted that the telephone had been missing for a week, Detective Stoker informed her that the robbery took place a week before the interview. The Defendant said, "OK. I'm…I'm done." Detective Stoker repeated, "You're done?" The Defendant simultaneous said, "You're yelling at me." Detective Stoker asserted, "That's your phone," and the Defendant agreed, "Yes, that's my phone." Both were speaking in raised voices.

Detective Stoker revealed that the victim of the robbery had named the person who arranged the drug transaction as a woman named Kayla, but the Defendant denied having talked to "any girl" about "roxies." She told Detective Stoker, "The only person I've ever sold roxy to that would be a girl, would be a girl named Holly and she's from Nashville and that was months and months ago and she called me and I didn't have any months and months ago…." Detective Stoker mentioned that he would check the victim's telephone for the Defendant's number, and the Defendant reiterated that her telephone had not been in her possession. She then asked for an attorney, and the interview was immediately concluded. Officer Barber took the Defendant to jail for the offense of driving on a revoked license, and the Defendant's telephone was seized.

Detective Stoker obtained a search warrant on January 4, 2016, and another detective performed a "dump" of the telephone pursuant to the warrant. The affidavit supporting the search warrant is not entirely intelligible and does not establish a connection between the Defendant, her telephone, and the crime. The search of the Defendant's telephone, however, revealed that she sold the victim's laptop through Facebook on the day that it was taken. Detective Stoker testified that he did not have probable cause to arrest the Defendant for the offenses at issue until after he searched the telephone and that the contents of the telephone provided the probable cause for the arrest of the Defendant on January 6, 2016, in connection with the robbery. The trial court found that the affidavit supporting the warrant was defective and granted the motion to suppress the results of the search at a hearing on December 9, 2016, and through a written order filed on January 11, 2017.

The State promptly sought a new search warrant on December 14, 2016. The new affidavit alleged that the victim, whose first name was Holly, was robbed during a drug deal which she had arranged by telephone with the Defendant. The affidavit recited information from the Defendant's police interview, including that the Defendant acknowledged the telephone in the victim's vehicle was her allegedly stolen telephone and that she had previously arranged a narcotics transaction with a woman named Holly. The affidavit alleged that there was probable cause to believe that the electronic communications between the victim and Defendant could be found on the Defendant's telephone. The warrant permitted the search of "[a]ny digital and/or electronic evidence, including but not limited to [various types of files] stored on the device to be searched to assist in obtaining additional evidence to the aggravated robbery." The return reflects that "cell phone calls, text messages, social media, audio video, device users, installed applications, MMS, [and] SMS messages" were inspected.

The Defendant, unaware of the new search warrant, subsequently moved to dismiss the indictment, prohibit the issuance of a second search warrant, and for the return of her telephone. The Defendant argued that the State, having chosen not to appeal the suppression issue, was bound by the trial court's ruling and prohibited from obtaining a subsequent search warrant. The trial court denied the motion, holding that the State could seek a second search warrant if it had probable cause, independent of any illegally obtained evidence, to support the new warrant.

The Defendant filed a motion to suppress the evidence obtained from her cell phone pursuant to the second warrant. In the motion, the Defendant attacked the warrant on various grounds, including that the warrant failed to describe with sufficient particularity the things to be searched and that the affidavit was based on either recklessly false statements or information obtained in violation of the Defendant's constitutional rights. The trial court denied the second motion to suppress.

The Defendant subsequently entered a plea of nolo contendere to theft of property valued at over five hundred dollars.[1] At the plea hearing, the State recited that, if the case had gone to trial, it would have introduced proof that the victim agreed to buy pills from the Defendant, that she was robbed by two men, that the search of the Defendant's

---

[1] Defense counsel noted that the valuation of the property as either over or under five hundred dollars was "a very close question," and the Defendant agreed to an amendment of the indictment in Count 1, charging robbery through a theory of criminal responsibility, to the offense of theft of property valued over five hundred dollars. Count 2, charging theft of property valued at five hundred dollars or less, was dismissed pursuant to the plea agreement.

telephone revealed that she had sold the items[2] taken during the robbery, and the items were ultimately recovered. The Defendant reserved, with the consent of the court and the prosecutor and with the agreement of all parties that the questions were collectively dispositive of the case, the following certified questions of law:

1. Whether [the trial court] erred when it overruled Defendant's suppression motions as to whether Officer Barber's arrest of Defendant and Detective Stoker's subsequent detention and questioning of Defendant constituted an illegal detention for the purpose of gathering additional evidence in violation of the Fourth Amendment the United States Constitution and Article I, § 7 of the Tennessee Constitution, and therefore required suppression of all evidence obtained from the seizure and subsequent search of Defendant's [cell phone], which was seized during the detention and interrogation of Defendant?

2. Whether [the trial court] erred when it overruled Defendant's suppression motions as to whether the State illegally seized Defendant's cellphone during her interrogation with Detective Stoker in violation of the Fourth Amendment to the United States Constitution and Article I, § 7 of the Tennessee Constitution, in that the State, according to the Defendant, only had probable cause to arrest Defendant for driving on a revoked/suspended license, only had the right to search Defendant for dangerous instrumentalities and evidence of the crime for which Defendant was arrested, and that Defendant's [cell phone] should not have been seized as a result of Defendant's arrest for driving on a revoked/suspended license because a [cell phone] has no bearing on whether or not Defendant was driving on a revoked/suspended license?

3. Upon granting Defendant's first suppression motion as to the first search warrant obtained by the State, did [the trial court] err when it overruled Defendant's motion to dismiss this case with prejudice, motion for an immediate stay, motion for return of her personal property pursuant to Rule 41 of the Tennessee Rules of Criminal Procedure, and motion to preclude the State from going forward with the second search warrant, given that Detective Stoker admitted under oath during the first suppression hearing that the State did not have probable cause to arrest Defendant prior to searching Defendant's [cell phone] on or around January 4, 2016, and, according to Defendant, the doctrines of Due Process, Res Judicata, Claim

---

[2] At the plea hearing, the prosecutor stated that a computer case and "maybe some ancillary items" were taken from the victim in addition to the computer.

Preclusion, and/or Collateral Estoppel should prevent the State from obtaining a second search warrant for Defendant's [cell phone] after the first search warrant was suppressed?

4. Whether [the trial court] erred when it overruled Defendant's second suppression motion as to whether the particularity and scope of the second search warrant was impermissibly overbroad in violation of the Fourth Amendment to the United States Constitution and Article I, § 7 of the Tennessee Constitution?

5. Whether [the trial court] erred when it overruled Defendant's motion to suppress her interrogation and, in not granting Defendant's motion to suppress her interrogation, whether the [trial court] erred in not redacting certain portions of Detective Stoker's affidavit in support of the second search warrant and in using Detective Stoker's un-redacted affidavit in support of the second search warrant to support finding that the affidavit in support contained sufficient factual allegations from which the magistrate could determine that probable cause existed to support issuance of the search warrant?

6. Even assuming, arguendo, that [the trial court] did not err in declining to suppress the interrogation of Defendant, did [the trial court] err when it overruled Defendant's motion to suppress as to whether Detective Stoker's affidavit in support in the second search warrant contained sufficient factual allegations from which the magistrate could determine that probable cause existed to support issuance of the search warrant?

## ANALYSIS

On appeal, the Defendant asserts that the trial court erred in denying her second motion to suppress and that, without the evidence obtained from the cell phone, the trial court should have dismissed the charges against her. The State responds that the certified questions are not dispositive because other evidence exists in the record to support the charges. The State also asserts that there were no constitutional infirmities associated with the second search warrant.

Under Tennessee Rule of Criminal Procedure 37(b)(2)(A), a defendant may enter a guilty plea and reserve a certified question of law "that is dispositive of the case" so long as certain requirements are met, including that the question was reserved with the consent of the state and trial court and that all parties agree that the question is dispositive. Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv). The reviewing court, however, is not

bound to accept the parties' agreement that a question is dispositive. *State v. Preston*, 759 S.W.2d 647, 651 (Tenn. 1988), *pet. to rehear denied* (Tenn. Oct. 24, 1988). Instead, the appellate court is required to make an independent determination that the question presented is indeed dispositive of the case. *State v. Dailey*, 235 S.W.3d 131, 135 (Tenn. 2007). Indeed, Rule 37 requires both that the question be dispositive of the case and that the judgment reflect that the parties agree that the question is dispositive of the case. Tenn. R. Crim. P. 37(b)(2)(A), (A)(iv). When the question is not dispositive, the appellate court must dismiss the appeal because it lacks jurisdiction. *State v. King*, 437 S.W.3d 856, 886 (Tenn. Crim. App. 2013).

A certified question is dispositive when the reviewing court is presented with two alternatives: either affirming the conviction or reversing and dismissing the charges. *Id.* If the appellate court might reverse and remand, the issue is not dispositive. *State v. Oliver*, 30 S.W.3d 363, 364 (Tenn. Crim. App. 2000); *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984). A question is not dispositive "when there is additional, unchallenged evidence which could be used to support the conviction." *State v. Prince Dumas*, No. W2015-01026-CCA-R3-CD, 2016 WL 4083256, at *2 (Tenn. Crim. App. Aug. 1, 2016). "[T]he burden is on defendant to see … that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified." *Preston*, 759 S.W.2d at 650; *see State v. Randall Lunsford*, No. 01C01-9603-CC-00098, 1997 WL 381910, at *4 (Tenn. Crim. App. July 11, 1997) (noting that the defendant's burden includes "providing a record that contains a complete description of the relevant facts"). Because of the difficulty of framing a proper certified question, Tennessee Rule of Criminal Procedure 37 has been described as "the quagmire of criminal jurisprudence in Tennessee." *State v. Thompson*, 131 S.W.3d 923, 923-24 (Tenn. Crim. App. 2003).

In *State v. Dailey*, the prosecutor, trial court, and defendant all believed the certified question was dispositive. 235 S.W.3d at 133. The prosecutor more particularly represented on the record that, while the State would certainly use other proof if it were to discover additional evidence at a later time, "as the evidence stands at this time, … [the confession] would be dispositive and we would not be able to proceed." *Id.* While this court dismissed the appeal, reasoning that other forensic and circumstantial evidence would be available to the prosecution, the Tennessee Supreme Court reversed, concluding that the appellate court could not "second-guess[]" the investigation and must instead determine whether the question is dispositive on the appellate record as it stands. *Id.* at 134, 135; *see also State v. Kenneth C. Dailey*, No. M2005-01223-CCA-R3-CD, 2006 WL 1994525, at *3 (Tenn. Crim. App. July 18, 2006). *Dailey* clarified that this court must determine whether "the prosecution had evidence not challenged by the certified question that could be used to prosecute the defendant." *Dailey*, 235 S.W.3d at 136. Because the State represented to the trial court that no other evidence existed and

because the record did not belie this assertion, the Tennessee Supreme Court determined that the question was dispositive on the record before it. *Id.*

We first examine the effect of Detective Stoker's testimony that he did not have probable cause to arrest the Defendant for the offenses at issue until he searched the telephone and that the contents of the telephone provided the probable cause for the arrest of the Defendant on the instant charges. The Defendant asserts that Detective Stoker's concession is the equivalent of the prosecutor's statement in *Dailey* that the case could not be prosecuted absent the proof. Probable cause is present when "'at the time of the arrest, the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense.'" *State v. Bell*, 429 S.W.3d 524, 530 (Tenn. 2014) (quoting *State v. Echols*, 382 S.W.3d 266, 277-78 (Tenn. 2012)). "[T]he strength of the evidence necessary to establish probable cause to arrest is significantly less than the strength of evidence necessary to find a defendant guilty beyond a reasonable doubt." *State v. Bishop*, 431 S.W.3d 22, 41 (Tenn. 2014). Generally, in determining whether probable cause exists for an arrest, "the assessment of probable cause is reviewed from a purely objective perspective, [and] the officer's subjective state of mind is irrelevant." *State v. Reynolds*, 504 S.W.3d 283, 301 (Tenn. 2016); *see State v. Huddleston*, 924 S.W.2d 666, 676 (Tenn. 1996) (noting that the officer's "subjective belief that he did not have enough evidence to obtain a warrant is irrelevant to whether or not probable cause actually existed"). In *Dailey*, the Tennessee Supreme Court accepted the prosecutor's concession that the State had no other evidence with which to prosecute the defendant, particularly noting that there was nothing in the record to contradict the statement. *Dailey*, 235 S.W.3d at 136. The record here, in contrast, does not contain a statement from the prosecutor asserting that he would be constrained to dismiss the charges without the disputed evidence. Furthermore, the record does contain other evidence connecting the Defendant to the crime. Accordingly, Detective Stoker's testimony does not render the question dispositive.

*Dailey* did not specify the quantum of proof necessary to render a question non-dispositive. Instead, it noted that the record contained nothing aside from the confession and the prosecutor's representation that the case would be dismissed if the confession were to be suppressed. *Id.* This court has previously held that "the record need not … contain evidence sufficient to support a conviction in order to divest this Court of jurisdiction to hear [an] appeal." *State v. William Jeffery Sweet*, No. E2008-00100-CCA-R3-CD, 2009 WL 2167785, at *10 (Tenn. Crim. App. July 21, 2009). Instead, "[i]t is enough for the record on appeal to demonstrate that evidence apart from the challenged item supports the State's charges." *Id.* at *10; *see id.* at *11 (concluding that evidence stipulated at plea hearing was "ample evidence" of guilt).

Despite the fact that this court has recited on numerous occasions that a certified question is not dispositive if it might require a remand, the Tennessee Supreme Court has on at least two occasions remanded after concluding that the certified question revealed that some evidence at issue was inadmissible but other evidence was admissible. In *State v. Payne*, the defendant challenged the admissibility of his statements through a certified question. 149 S.W.3d 20, 23-24 (Tenn. 2004). The prosecutor stated that, without the confession, the State would not be able to establish a prima facie case. *Id.* at 24. On appeal, the State agreed that the certified question was dispositive based on the prosecutor's concession that the State would be unable to prosecute absent the statement. *Id.* at 24 n.4. The Tennessee Supreme Court concluded that two "phases" of the interview required suppression but that the first "phase" was admissible. *Id.* at 34-35. Despite the fact that "the defendant did not implicate himself in the fire or in his mother's death" during the first "phase," the Court remanded for further proceedings. *Id.* at 35. In *State v. Walton*, the appellate court determined that while the defendant's statement required suppression, the physical evidence recovered did not. 41 S.W.3d 75, 96 (Tenn. 2001). Because his possession of various stolen goods could properly be considered as evidence of guilt, the Tennessee Supreme Court remanded. *Id.* (observing that the fact that the question was not dispositive did not become apparent until the court had analyzed the question and noting that the case presented "special circumstances").

Nevertheless, when the record reveals additional, unchallenged evidence to support the charges, the question is generally nondispositive. *See, e.g.*, *State v. Maegan Davis*, No. W2017-02145-CCA-R3-CD, 2018 WL 3409678, at *6 (Tenn. Crim. App. July 12, 2018) (concluding that the defendant's conviction for driving under the influence ("DUI") was supported by testimony from the suppression hearing that she acted impaired and that the legality of the blood draw was therefore not dispositive of the DUI conviction, although it was dispositive of her conviction for DUI per se); *State v. Jared C. Brown*, No. M2004-02101-CCA-R3-CD, 2005 WL 2139815, at *5 (Tenn. Crim. App. Aug. 30, 2005) (holding that a question regarding whether the search of the defendant's home was unconstitutional was not dispositive when the defendant failed to simultaneously challenge the search of a package at a shipping facility and the package constituted "proof of the marijuana offense"); *State v. Kevin Bufford*, No. M2004-00536-CCA-R3-CD, 2005 WL 1521779, at *4 (Tenn. Crim. App. June 24, 2005) (holding that a question challenging the defendant's statement was not dispositive because a security camera showed him and an accomplice committing one robbery and the accomplice confessed his involvement and implicated the defendant); ); *State v. Thompson*, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003) (concluding that the defendant's challenge to his status as a multiple DUI offender was not dispositive of the case when the State would be able to sentence him for DUI even if the court ruled in his favor); *State v. Oliver*, 30 S.W.3d 363, 364 (Tenn. Crim. App. 2000) (same); *State v. James O. Gambrell, Sr.*, No. 01C019603-CR-00123, 1997 WL 230199, at *3 (Tenn. Crim. App.

May 7, 1997) (considering the victim's willingness to testify in determining that, while the defendant's confession may have been the "cornerstone" of the case at the time of the suppression hearing, the prosecution's statement at the time of the plea hearing that the victim was at that time willing to testify rendered the confession nondispositive); *State v. Randall Lunsford*, 1997 WL 381910, at *4  (concluding that the question of the validity of the search warrant for the defendant's business was not dispositive because the package containing one kilogram of cocaine was seized from a shipment carrier prior to the issuance of the warrant); *see also State v. Hendrix*, 782 S.W.2d 833, 837 (Tenn. 1989) (Harbison, J., concurring) (noting that the question was not dispositive as to one defendant because of the prosecutor's unrefuted statement "that additional evidence, not involved in the search, was possessed by the State"); *State v. Jennette*, 706 S.W.2d 614, 616 (Tenn. 1986) (concluding that the question was not dispositive because, even if the search were invalid, the testimony of officers who had observed the marijuana while flying over the property was "alone was sufficient to convict the appellees"); *cf. State v. John Whittington*, No. W2004-02405-CCA-R3-CD, 2005 WL 3059423, at *3 (Tenn. Crim. App. Nov. 10, 2005) (noting that the suppression of a blood test would not be dispositive of a dismissed count of DUI when other evidence of intoxication existed but concluding that it was dispositive of the count to which the defendant pled guilty, DUI per se).

The question this court is faced with is whether, if we were to suppress the evidence obtained from the Defendant's interview and cell phone, there would still be evidence to support the charges.  We conclude that, in the case at bar, the State possessed sufficient additional evidence to render the questions presented nondispositive.  We reiterate that the quantum of proof is not that which would be necessary to support a conviction. *William Jeffery Sweet*, 2009 WL 2167785, at *10.  The record reveals that, at the time that the Defendant was arrested on the unrelated traffic violation, law enforcement knew that the victim had contacted a person whose first name was Kayla to arrange the purchase of some pills.  The victim's description of Kayla closely matched the Defendant's physical appearance.  The victim had previously purchased pills from Kayla near a trash can at a location which Detective Stoker recognized to be the Defendant's residence.  Kayla told the victim that she would not personally conduct the transaction but would be "sending her boyfriend."  During the drug transaction, the victim was beaten and robbed by two men.  The men left a telephone in the victim's car, and this telephone was connected by evidence not specified in the record to Mr. Sparkman.  Detective Stoker testified that this abandoned telephone (as well as the one later seized from the Defendant) contained messages which alerted police that the Defendant and Mr. Sparkman were romantically involved.  The testimony of the victim could have identified the Defendant as the individual who arranged the drug transaction and sent her boyfriend to complete the transaction, which ultimately proved to be a robbery. *See State v. Michael Kennedy*, No. W2001-03107-CCA-R3-CD, 2003 WL

402798, at *3 (Tenn. Crim. App. Feb. 21, 2003) (concluding that question was not dispositive based on officer's testimony that the victim had observed his stolen property in the defendant's yard). We conclude that the proof in the record, in the absence of a representation by the prosecutor that the State would otherwise be forced to dismiss the charges, is sufficient to render the certified questions nondispositive. Accordingly, we do not have jurisdiction to consider the questions presented.

## CONCLUSION

Based on the foregoing reasoning, we conclude that the questions are not dispositive and dismiss the appeal.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE